UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard STEWART,
Defendant-Appellant.

No. 85–1070.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1985.

Decided Dec. 27, 1985.

Brian C. Leighton, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

John F. Garland, Asst. Fed. Defender, Fresno, Cal., for defendant-appellant.

Before SNEED, KENNEDY, and BOOCHEVER, Circuit Judges.

KENNEDY, Circuit Judge:

Appellant Richard Stewart was convicted by a federal jury on fourteen counts of an indictment arising from the operation of an illegal drug manufacturing and distribution network in Fresno, California. There are but two issues on appeal. The first pertains to the jury instructions given on a single count for carrying firearms during the commission of a felony in violation of 18 U.S.C. § 924(c)(2) (1982), as to which we reverse. The second issue is whether a life

sentence without possibility of parole was properly imposed under the Continuing Criminal Enterprise statute, 21 U.S.C. § 848. The government concedes error. We agree and vacate the sentence, remanding for further sentencing proceedings.

Federal agents executed a search warrant at Stewart's business premises and discovered an operating methamphetamine laboratory. On the same day, a search warrant was executed at Stewart's residence. When agents arrived, Stewart was sitting in his automobile in front of the residence. He was arrested on the drug charges, and officers searched the car. An illegal sawed-off "UZI" rifle was in the trunk. Appellant argues that his conviction for carrying the firearm unlawfully during the commission of a felony must be reversed because the government failed to prove that his possession of the rifle was in any way related to the underlying felony of possession of controlled substances with intent to manufacture.

■ Under the evidence adduced at trial, the government might have made a case sufficient to sustain the firearms conviction, if the jury had been properly instructed. While Stewart was in front of his residence with a rifle under his control in the trunk of his car, five individuals were in the residence, some with documents that related to the drug manufacturing and sale operation. Search of the residence yielded containers of methamphetamine and its precursors, various other chemicals, glassware and laboratory equipment, and instructions for the manufacture of methamphetamine. Given the use of firearms in some drug transactions, *see United States v. LaGuardia*, 774 F.2d 317, 321 (8th Cir. 1985) (in prosecution under § 924(c)(1), recognizing "the utility of firearms in advancing criminal adventures in narcotics"); *United States v. Grant*, 545 F.2d 1309, 1313 (2d Cir.1976) (judicial notice of use of firearms by narcotics dealers), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977), and the known risks of conducting an illegal drug business, the jury could infer from all of the evidence that Stew-

art's possession of the UZI outside his residence was intended to facilitate the drug operations or secure the premises where contraband and other evidence were located. *See United States v. LaGuardia*, 774 F.2d at 321 (§ 924(c)(1); weapons found in apartment along with cash and cocaine); *United States v. Chase*, 692 F.2d 69, 71 (9th Cir.1982) (per curiam) (§ 924(c)(2); pistol and cocaine found in defendant's house); *United States v. Grant*, 545 F.2d at 1312–13 (§ 924(c)(1); loaded guns found on premises where cocaine was stored). The government, however, did not attempt to link possession of the firearm with the underlying felony, and the district judge did not instruct the jury that a relation between the two is required.

The statute as written when Stewart committed the offense provided in pertinent part that it was a crime to "carr[y] a firearm unlawfully during the commission of any felony...." 18 U.S.C. § 924(c)(2) (1982). In 1984, Congress revised section 924(c), combining former subsections 924(c)(1) and 924(c)(2). The 1984 amendment substituted for the word "during" the phrase "during *and in relation to*." 18 U.S.C.A. § 924(c) (West Supp.1985) (emphasis added). Our study of the legislative history of the amendment, S.Rep. No. 225, 98th Cong., 1st Sess. 312–14 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3490–92 [hereinafter "Senate Report"], indicates the "in relation to" language was not intended to create an element of the crime that did not previously exist, but rather was intended to make clear a condition already implicit in the statute. The legislative history reveals that because the amendment eliminated the requirement that the firearm be carried unlawfully, 18 U.S.C.A. § 924(c) (West Supp.1985), the "in relation to" language was added to allay explicitly the concern that a person could be prosecuted under section 924(c) for committing an entirely unrelated crime while in possession of a firearm. Senate Report at 314 n. 10. Though the legislative history does not say so expressly, it strongly implies that the "in relation to" language did not alter the

scope of the statute, explaining that "the [original] section was directed at persons who chose to carry a firearm as an offensive weapon for a specific criminal act." *Id.* Moreover, where the legislative history discusses changes in the coverage of the statute effected by the amendment, it does so expressly. *Id.* at 313 n. 9 (establishing as the predicate offense any "crime of violence" instead of any "felony"; expressly recognizing that this change both expands and restricts the scope of the statute); *id.* at 314 n. 10 (noting the broader coverage of the statute because of the elimination of the "unlawfully" requirement).

Although the legislative history surrounding the addition of the "in relation to" language is not entirely free of ambiguity, we interpret it as revealing an understanding on the part of the amending Congress that the earlier Congress intended to require a relation between the firearm and the underlying crime. *See Russell v. Law Enforcement Assistance Administration,* 637 F.2d 1255, 1258 n. 5 (9th Cir. 1980) (using revised Law Enforcement Assistance Administration Act to resolve ambiguities in old act where "the revised language simply clarifies the original legislative intent"). While a later Congress' understanding of the legislative intent of an earlier Congress is not binding on the courts, it is entitled to deference. *Russ v. Wilkins,* 624 F.2d 914, 924–25 (9th Cir. 1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1976, 68 L.Ed.2d 296 (1981); *Chugach Natives, Inc. v. Doyon, Ltd.,* 588 F.2d 723, 730–31 (9th Cir.1979). *See generally* N. Singer, 2A *Sutherland Statutory Construction* § 49.11, at 414–15 (rev. 4th ed. 1984). We accord such deference here.

Although the legislative history of the original version of section 924(c) is sparse, *Simpson v. United States,* 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978), the evident purpose of the statute was to impose more severe sanctions where firearms facilitated, or had the potential of facilitating, the commission of a felony. *See United States v. LaGuardia,* 774 F.2d at 321; *United States v. Mason,* 658 F.2d 1263,

1270–71 (9th Cir.1981). That purpose necessarily implies some relation or connection between the underlying criminal act and the use or possession of the firearm. *See United States v. Robertson,* 706 F.2d 253, 256 (8th Cir.1983). Indeed, in a previous case arising under the statute, we suggested that "Congress did not intend to penalize one who happens to have a gun in his possession when he commits an entirely unrelated offense." *United States v. Moore,* 580 F.2d 360, 362 (9th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978).

We interpret the statute that applied to Stewart as if it contained the requirement that the firearm be possessed "during and in relation to" the underlying offense. If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute. *See United States v. LaGuardia,* 774 F.2d at 321; *United States v. Mason,* 658 F.2d at 1270–71.

Stewart did not request specific jury instructions regarding the relational element of the crime, but that does not preclude his raising the issue on appeal. The relation between the firearm and the underlying offense is an essential element of the crime, and failure to instruct upon it warrants reversal where there is a significant possibility the jury might have acquitted if it had considered the matter. *United States v. Hudson,* 564 F.2d 1377, 1380 & n. 3 (9th Cir.1977). We reverse the conviction under 18 U.S.C. § 924(c), Count 13, of the indictment.

Since there were convictions on other counts, we must address the issue of sentencing. Life imprisonment without possibility of parole is a permissible sentence under the Continuing Criminal Enter-

prise statute. 21 U.S.C. § 848(a)(1) (authorizing punishment of life imprisonment); *id.* § 848(c) (federal parole eligibility provisions inapplicable); *United States v. Valenzuela,* 646 F.2d 352, 354 (9th Cir.1980). Although as a general rule a sentence is not reviewable on appeal if it is within the statutory limits, *United States v. Barker,* 771 F.2d 1362, 1364 (9th Cir.1985), both Stewart and the government urge us to vacate the sentence on the ground that the district judge may have acted on mistaken advice from the government that sentencing Stewart to life imprisonment without possibility of parole would not necessarily preclude his eventual parole release. We agree that the sentence should be vacated.

At Stewart's sentencing hearing, the prosecutor stated to the district judge that even if sentenced to life imprisonment without possibility of parole, Stewart could become eligible for parole after serving only ten years of his sentence. The government now concedes this advice was mistaken. *See United States v. Valenzuela,* 646 F.2d at 354. As the district court may have relied on misinformation, we conclude that further sentencing proceedings are warranted, *United States v. Ruster,* 712 F.2d 409, 412–13 (9th Cir.1983), particularly in light of the government's conceding the issue. We do not restrict the authority of the district judge to reimpose the same sentence if, upon consideration of the applicable statutes and authorities and all information properly before it, it deems the punishment permissible and warranted.

Stewart's conviction for carrying a firearm during the commission of a felony, Count 13 of the indictment, is REVERSED. Stewart's sentence of life imprisonment without possibility of parole is VACATED. We REMAND to the district court for further proceedings.