**UNITED STATES of America**

v.

**Glenn GRIDLEY.**

**No. SCR 89–43(1).**

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 1, 1989.

Rick Jancha, Asst. U.S. Atty., Hammond, Ind., for U.S.

Charles Asher, South Bend, Ind., for Glenn Gridley.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On September 7, 1989, the Grand Jury for the Northern District of Indiana returned a superseding indictment charging the defendant, Glenn Gridley, with seven counts of federal narcotics and firearms violations. On October 3, 1989, the defendant pled guilty to Counts 1 and 6 of the superseding indictment. Count 1 charges the defendant with conspiracy to possess and distribute an amount greater than 500 grams of cocaine in violation of 21 U.S.C. § 846. Count 6 charges the defendant with possession with intent to distribute approximately eight ounces of cocaine in violation of 21 U.S.C. § 841(a)(1).

On October 4, 1989, the court held a bench trial on Count 7 of the superseding indictment.[1] Count 7 charges the defendant with using and carrying a .45 caliber handgun during and in relation to a drug trafficking crime (Count 6) in violation of 18 U.S.C. § 924(c)(1).[2] Following the presentation of the evidence, counsel for both the defendant and the government filed written closing arguments. The issue now before the court is whether the government has proved beyond a reasonable doubt that the defendant used or carried a .45 caliber handgun during and in relation to the drug trafficking crime for which he pled guilty in Count 6. The court holds that the government has met its burden and that the defendant is GUILTY beyond a reasonable doubt of violating 18 U.S.C. § 924(c)(1).

## I.

### FINDINGS OF FACT

On May 13, 1989, the police executed a search warrant at the defendant's residence. The defendant was lying on his bed in his bedroom when the police entered. During the search, the police found a .45 caliber semi-automatic handgun laying on top of a nightstand next to the defendant's bed. The handgun was laying in an unzipped brown case.[3] The chamber of the gun's barrel was loaded with one glazer round shell. In the magazine there were five other bullets with alternating rounds of glazer-tipped bullets and hollow-tipped bullets. Glazer round shells are quite lethal and are known for their propensity for stopping power rather than penetrating power. Glazer rounds also are quite expensive and are rarely used for target shooting due to their great expense. The police also found three other firearms in the defendant's bedroom.

Within a proximity of twelve feet from the .45 caliber handgun was located a bag in the bedroom that contained eight ounces of cocaine.[4] In the same bedroom, the police found the following drug paraphernalia: a container of Inositol (a cutting agent to decrease the purity of cocaine), a scale, a ceramic bowl with cocaine residue, and a mirror in a dresser drawer covered with cocaine residue. The bedroom was the defendant's private space and the place where he kept his belongings. The defendant did not want others tampering with his belongings, including the cocaine. Thus, he kept the cocaine in his bedroom so others would not disturb it.

The defendant sold cocaine out of his bedroom and stored the cocaine in his bedroom. The handgun was visible in the defendant's bedroom when he conducted cocaine transactions. The defendant would carry his .45 caliber handgun with him when he traveled to a hotel to purchase cocaine from his supplier. On most occasions, the defendant would have the handgun in the brown case with him when he would conduct cocaine transactions.

1. The court fully complied with the mandates of *United States v. Scott*, 583 F.2d 362 (7th Cir. 1978), in finding that the defendant knowingly and voluntarily waived his Sixth Amendment right to a trial by jury. The waiver was in writing signed by the defendant and his court-appointed attorney. Additionally, the required colloquy took place in open court between the defendant and the court regarding the defendant's Sixth Amendment rights. Therefore, the record is clear that the defendant knowingly and voluntarily waived his constitutional right to a trial by jury on Count 7 of the superseding indictment.

2. Count 7 reads in full:
     On or about May 13, 1989, in the Northern District of Indiana, and elsewhere, GLENN GRIDLEY, defendant herein, knowingly and unlawfully did carry and use a firearm, to wit: a .45 caliber, semi-automatic handgun, serial number 70B33161 during and in relation to the knowing, intentional and unlawful possession with intent to distribute cocaine in an amount of approximately eight ounces; in violation of Title 21, United States Code, Section 841(a)(1);
     All in violation of Title 18, United States Code, Section 924(c)(1).

3. There is some dispute as to whether the hammer was cocked and the safety on, or whether the hammer was down with the safety off. While that dispute is of some interest to the court, it is not necessarily outcome determinative here.

4. This is the eight ounces of cocaine for which the defendant pled guilty in Count 6. Count 6 serves as the predicate offense for Count 7.

The defendant is a lifelong gun enthusiast. He is a member and supporter of the National Rifle Association. He believes that it is his constitutional right and chosen practice to possess firearms as a hobby and for self defense. He has always complied with firearm registration laws. His .45 caliber handgun was legally registered.

## II.

### DISCUSSION

The defendant was tried on Count 7 of the superseding indictment. Count 7 charges the defendant with using and carrying the .45 caliber handgun during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Section 924(c)(1) provides in relevant part:

Whoever, *during and in relation to any ... drug trafficking crime ...* for which he may be prosecuted in a court of the United States, *uses or carries a firearm,* shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

(emphasis added). In order to be convicted under 18 U.S.C. § 924(c)(1), the government must prove beyond a reasonable doubt that the defendant used or carried a firearm during and in relation to any crime of drug trafficking. *United States v. Krasaway,* 881 F.2d 550, 553–54 (8th Cir.1989). Before determining whether the government has met its burden, the court will first examine the legislative history of section 924(c)(1) and the relevant case law interpreting it.

### Legislative History

In its brief, the government provided the court with a thorough examination of the legislative history of 18 U.S.C. § 924(c). The legislative history of this statute is sparse at best. The original version of section 924(c) was enacted as part of the Gun Control Act of 1968, which as a historical event followed the assassinations of Senator Robert F. Kennedy and Reverend Martin Luther King. An insight into that history and an interpretation of an earlier version of the statute is found in the Supreme Court decision of *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).

Congress was dissatisfied with the Supreme Court's interpretation of section 924(c) as reflected in the decisions of *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) and *Busic.* In the view of Congress, these two decisions had greatly reduced the effectiveness of the statute. The *Simpson* case had determined that the statute was inapplicable in cases where the predicate felony statute contained its own enhancement provision for the use of a dangerous weapon. *Busic* reaffirmed this concept. Congress thus set out in 1984 to revise section 924(c) to foreclose any attempt by the federal judiciary to undermine the intent of the statute.

The 1984 amendments revised the statutory language to consolidate subsections (c)(1) and (2) of the original statute. Congress substituted for the word "during" the phrase "during *and in relation to.*" 18 U.S.C. § 924(c)(1) (1984) (emphasis added). Additionally, Congress changed the underlying predicate offense from any "felony" to any "crime of violence." *Id.* Congress also opted to drop the term "unlawfully" from the statute thereby bringing persons who are licensed to carry firearms within the scope of section 924(c). *Id. See also United States v. Poole,* 878 F.2d 1389, 1394 (11th Cir.1989). The court also notes that in 1986 Congress further amended the statute to add "drug trafficking crime" to the "any crime of violence" language. 18 U.S.C. § 924(c)(1) (1986).

The legislative history of section 924(c), as amended in 1984, can be found in S.Rep. No. 225, 98th Cong., 2d Sess. 1, 312–14 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3490–92. The report of the United States Senate reflects a reiteration by Congress that section 924(c) was "designed to impose a mandatory penalty without the possibility of probation or parole, for any person who uses or carries a firearm during and in relation to a Federal crime of violence." *Id.* at 3490. This intent can be found in the following example given by Congress:

[A] person convicted of armed bank robbery in violation of [18 U.S.C.] section 2113(a) and (d) of using a gun in its commission (for example by pointing it at a teller or otherwise displaying it whether or not it is fired) would have to serve five years....

*Id.* at 3492. In a footnote, Congress attempted to clarify its intent as follows:

Evidence that a defendant had a gun in his pocket but did not display it, or refer to it, could nevertheless support a conviction for "carrying" a firearm in relation to the crime if from the circumstances or otherwise it could be found that the defendant intended to use the gun if a contingency arose or to make his escape.

*Id.* at 3492 n. 10. Congress then stated:

[T]he requirement that the firearm's use or possession be "in relation to" the crime would preclude its application in a situation where its presence played no part in the crime, such as a gun carried in a pocket and never displayed or referred to in the course of a pugilistic barroom fight.

*Id.* The application of section 924(c) is therefore precluded in a situation where the firearm's presence played no part in the crime.

Upon reviewing the legislative history of section 924(c), it is clear that Congress was trying to partially undo what had been done by the Supreme Court in *Simpson* and *Busic* and intended to punish where a firearm facilitated or had a potential of facilitating the commission of a felony.

### Relevant Case Law

The court will next examine some of the significant and relevant decisions interpreting section 924(c)(1). In *United States v. Rosado,* 866 F.2d 967 (7th Cir.1989), the Seventh Circuit interpreted the "uses or carries" language of section 924(c)(1). In *Rosado,* the defendants were charged with various drug and weapons violations. After a bench trial before Judge Will, the defendants were found guilty of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and carrying a firearm during a trafficking offense in violation of 18 U.S.C. § 924(c)(1). In affirming the convictions, Judge Ripple interpreted section 924(c)(1) as follows:

The defendants submit that the facts of this case—where Mr. Rosado's revolver was never displayed to any person at the scene and was in the pocket of his jacket, which was in his car parked thirty feet from the transaction—do not satisfy the "use" or "carry" requirement of the statute.

As in all cases of statutory interpretation, the starting point for our analysis of section 924(c) is the plain language employed by Congress. *Indiana Port Comm'n v. Bethlehem Steel Corp.,* 835 F.2d 1207, 1210 (7th Cir.1987); *see also United States v. Rawlings,* 821 F.2d 1543, 1545 (11th Cir.), *cert. denied,* [484] U.S. [979], 108 S.Ct. 494, 98 L.Ed.2d 492 (1987) ("When examining [section 924(c)], we must assume that Congress used the words of the statute as they are commonly and ordinarily understood."). Here, Congress stated that anyone who *"uses* or *carries* a firearm"* during certain drug trafficking offenses shall be subject to an additional five years of imprisonment. 18 U.S.C. § 924(c) (emphasis supplied). Although the weapon was not on Mr. Rosado's person at the moment of his arrest, he clearly "used" and "carried" a firearm in violation of section 924(c). The evidence adduced at trial establishes that Mr. Rosado put on and wore the jacket containing the concealed weapon to the transaction, availing himself of the protection a gun would offer in the acquisition and subsequent transportation of $35,000. Moreover, the agents' testimony could reasonably lead a trier of fact to conclude that Mr. Rosado carried the firearm while conferring with his co-conspirators at the transaction site, and while waiting for the undercover buyers to arrive. As the district court recognized, the fact that he "never had an opportunity to brandish or discharge his gun does not mean that he did not 'use' it." *United States v. Moore,* 580 F.2d 360, 362 (9th Cir.), *cert. denied,*

439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978). Its presence "increased the likelihood of success; without [it] he probably would not have sallied forth." *Id.* As the Eighth Circuit noted in *United States v. LaGuardia,* 774 F.2d 317 (8th Cir.1985), "[w]e have recognized the utility of firearms in advancing criminal adventures in narcotics.... Weapons can be used for protection or intimidation and therefore facilitation of illegal transactions." 774 F.2d at 321 (citing *United States v. Milham,* 590 F.2d 717, 721 (8th Cir.1979), and *United States v. Wiener,* 534 F.2d 15, 18 (2d Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976)). Mr. Rosado's removal of the jacket at the scene of the crime because of the warm weather, combined with the fortuity of a delay in Agent Quarles' arrival certainly did not constitute an abandonment of the weapon. He placed the weapon-containing jacket on the front seat of his open car, which was parked but a short distance away. The trial judge, sitting as trier of fact, certainly was entitled to conclude that the presence of a loaded revolver so close at hand provided Mr. Rosado with the security and confidence needed to undertake such a large cocaine transaction. As then-Judge Kennedy noted in *United States v. Stewart,* 779 F.2d 538 (9th Cir.), *cert. denied,* [484] U.S. [867], 108 S.Ct. 192, 98 L.Ed.2d 144 (1987):

> If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute.

*Id.* at 540.

We caution that our holding today affords us no opportunity to delineate precisely the outer limits of this statute's reach. Certainly, Congress did not intend that it be given a cramped reading. On the other hand, as the Ninth Circuit emphasized in *Stewart,* there always must be "some relation or connection between the underlying criminal act and the use or possession of the firearm." *Stewart,* 779 F.2d at 540. *Accord United States v. Robertson,* 706 F.2d 253 (8th Cir.1983) (per curiam) (no firearm "use" absent evidence that defendant ever carried weapon or that weapon played role in loansharking). The evidence of record in this case places Mr. Rosado's conduct squarely within the ambit of the statute. Moreover, as our recent decision in *United States v. Diaz,* 864 F.2d 544 (7th Cir.1988), firmly establishes, Mr. Sanchez is also liable under this statute because he participated with Mr. Rosado in the conspiracy to distribute cocaine under circumstances where one could reasonably expect that a weapon would be carried.

*Rosado,* 866 F.2d at 969–70 (footnote omitted).

■ There can be no doubt that *Rosado* is relevant and indeed binding precedent in this case on this court. *Rosado* is instructive in that the firearm need not be found on the defendant's person in order to satisfy the "uses or carries" requirement of the statute. There can be no doubt that the facts of this case fit well, if not perfectly, into the framework established in *Rosado.*

There also exists significant and relevant case law from other circuits interpreting section 924(c)(1). In *United States v. Stewart,* 779 F.2d 538 (9th Cir.1985), *cert. denied,* 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987), then Judge Kennedy outlined the relational element in section 924(c)(1) between the firearm and the underlying offense. The offense committed in *Stewart* predated the 1984 "in relation to" amendment. The court, nevertheless, interpreted the pre–1984 version of section 924(c) that applied to the defendant as if it contained the requirement that the firearm be possessed "during and in relation to" the underlying offense. *Id.* at 540. Judge Kennedy then stated:

If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute.

*Id.* The court then reversed the district court for failure to instruct upon the relational element between the underlying felony and the firearm. *Id.* The *Stewart* decision is instructive in that it defines the relational element that the government must prove in order to sustain a conviction under section 924(c)(1). As a result, this court is quite willing to and does give full-blown effect to the reasoning and result announced in *Stewart.*

The Second Circuit in *United States v. Feliz–Cordero,* 859 F.2d 250 (2d Cir.1988), also construed the term "uses" in section 924(c)(1). In *Feliz–Cordero,* an undercover officer arranged for a purchase of "crack" from an apartment occupied by defendant Cordero. A search warrant was issued and the officers uncovered in Cordero's apartment a small quantity of cocaine, drug records, $11,000 in U.S. currency, a beeper, and, *in* a bedroom dresser drawer, a .38 caliber revolver. Cordero was convicted under section 924(c)(1) for using and carrying the .38 caliber revolver during a drug trafficking crime.

On appeal, the Second Circuit held that in order for possession of a firearm to come within the "uses" provision of section 924(c)(1), one of the following is required: i) Proof of a transaction in which the circumstances surrounding the presence of a firearm suggest that the possessor of the firearm intended to have it available for possible use during the transaction; or ii) The circumstances surrounding the presence of a firearm in a place where drug transactions take place suggest that it was strategically located so

as to be quickly and easily available for use during such a transaction.

*Feliz–Cordero,* 859 F.2d at 254. The court then reversed Cordero's conviction finding that the presence of a firearm inside a dresser drawer did not meet either of the requirements set forth above. *Id.* The court reasoned that there was no basis to conclude that the gun would have been quickly accessible if needed. *Id.* Thus, under the *Feliz–Cordero* analysis, firearms which are strategically located and easily accessible fall within the "uses" provision of section 924(c)(1).

In *United States v. Theodoropoulos,* 866 F.2d 587 (3d Cir.1989), a loaded shotgun in plain sight was found inside the defendant's apartment while three other handguns were found outside of the apartment in a trash can. In the apartment, the police also seized drugs from the defendant's pockets and from a metal box belonging to the defendant. The government relied on all four handguns in charging the defendant with a violation of section 924(c)(1), the predicate offense being a conspiracy to distribute cocaine. The defendant was then convicted of violating that statute.

On appeal, the Third Circuit in *Theodoropoulos* recognized that:

> [T]he presence of a loaded shotgun in plain sight in [defendant] Trelopoulos' apartment where it was readily accessible to the occupants was evidence that the firearm was in use during and in relation to the drug trafficking conspiracy proven in this case. The jury could reasonably have concluded that Trelopoulos used at least the shotgun found in the apartment "as a means of ... protecting his possession of the cocaine."

866 F.2d at 597 (citation omitted). The court, however, could not make this same conclusion with respect to the three firearms found in the trash can outside of the apartment. As a result, the court reversed the defendant's conviction because it could not exclude the possibility that the jury may have convicted him on the basis of the three guns found in the trash can rather than the loaded shotgun in plain view inside the apartment. *Id.* at 598. *Theodoro-*

*poulos* is instructive in that a firearm's location and accessibility may bring it within the ambit of section 924(c)(1).

Two decisions emanating from the Fifth Circuit also are instructive and relevant to this case. In *United States v. Coburn*, 876 F.2d 372 (5th Cir.1989), an unloaded shotgun was prominently displayed in the rear window of a pickup truck used to distribute the defendant's marijuana. In affirming the defendant's conviction under section 924(c)(1), the Fifth Circuit held that the jury could reasonably infer that the shotgun "emboldened" defendant, allowing her to display the weapon to protect herself or to intimidate others during her drug trafficking. *Id.* at 375. Most recently, in *United States v. Boyd*, 885 F.2d 246 (5th Cir.1989), the Fifth Circuit held that a jury could reasonably conclude that a loaded shotgun in a warehouse office near the drug making activity and within arm's reach of the defendant served to facilitate the overall drug trafficking activity.

Lastly, when large numbers of firearms are readily available in strategic locations near large quantities of drugs, courts will apply what has come to be known as the "fortress theory." *United States v. Wilson*, 884 F.2d 174, 177 (5th Cir.1989). Under this theory, mere presence of firearms in a residence used by drug traffickers is sufficient to constitute a violation of section 924(c)(1). The government concedes that it is not proceeding under such a theory. The court agrees that such a theory is not applicable to a case involving eight ounces of cocaine.

### Analysis of Elements

■ In light of the legislative history and relevant case law, the court must now determine whether the government has sustained its burden of proving beyond a reasonable doubt that the defendant violated section 924(c)(1). In order to convict the defendant under section 924(c)(1), the first element the government must prove is that the defendant committed a "drug trafficking crime" within the meaning of the statute. The defendant pled guilty to Count 6 of the superseding indictment. Count 6 charges him with possession with intent to distribute eight ounces of cocaine in violation of 21 U.S.C. § 841(a)(1). A violation of section 841(a)(1) is a predicate offense to a violation of section 924(c)(1). *Poole*, 878 F.2d at 1392; *United States v. Henry*, 878 F.2d 937, 943 (6th Cir.1989). *See also* 18 U.S.C. § 924(c)(2) (defining drug trafficking crime). The government, therefore, has proved beyond a reasonable doubt that the defendant engaged in a "drug trafficking crime" within the meaning of section 924(c)(1).

The next element the government must prove is that the defendant's conduct was within the scope of the "uses or carries" requirement of section 924(c)(1). The legislative history and case law previously discussed reveal that Congress did not intend a cramped reading of the statute. *Rosado*, 866 F.2d at 970. The fact that the handgun was not found on the defendant's person at the time of his arrest does not take this case outside the scope of the "uses or carries" requirement. *See id.* at 969–70. Nor does the fact that the defendant never had the opportunity to brandish, display, or discharge the handgun take the case outside of the ambit of the statute. *United States v. Power*, 881 F.2d 733, 737 (9th Cir.1989); *United States v. Meggett*, 875 F.2d 24, 29 (2d Cir.1989); *Rosado*, 866 F.2d at 969. The legislative history and case law demonstrate that the government need only prove that the .45 caliber handgun was "available for possible use during the transaction" or "strategically located so as to be quickly and easily available for use during such a transaction." *Feliz–Cordero*, 859 F.2d at 254. Clearly the presence of a loaded handgun on a nightstand within arm's reach of the defendant is sufficient evidence to satisfy the "uses or carries" requirement of section 924(c)(1). It is enough that the defendant's handgun was present for protection, whether or not actually used. *Stewart*, 779 F.2d at 540. As a result, the court finds that the government has proved beyond a reasonable doubt that the defendant's conduct fell within the "uses or carries" requirement of section 924(c)(1).

The government must next prove that the handgun was used "in relation to" the underlying drug trafficking crime. The legislative history and case law previously discussed reveal that a relationship must be established between the firearm and the underlying crime. *Theodoropoulos,* 866 F.2d at 597; *Stewart,* 779 F.2d at 540. The relationship between the firearm and the underlying crime is established " 'if from the circumstances or otherwise it can be found that the defendant *intended to use the gun* if a contingency arose or to make his escape.' " *Feliz–Cordero,* 859 F.2d at 254 (emphasis in original) (quoting S.Rep.No. 225, 98th Cong., 2d Sess. 1, 314 n. 10 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3492 n. 10). Furthermore, *Boyd* and *Theodoropoulos* teach that the court can look to the firearm's accessibility and location in determining whether such a relationship exists.

In the present case, the .45 caliber handgun was loaded and in plain view in the same room where the defendant conducted his drug transactions. The handgun was only twelve feet from the eight ounces of cocaine and drug paraphernalia. The handgun also was within arm's reach of the bed on which the defendant was found when the police entered his home. A reasonable inference can be drawn from these facts that the defendant strategically placed the handgun on his nightstand to not only protect himself but to protect the cocaine. The defendant argues that such an inference would be unreasonable since the cocaine transactions occurred in a friendly atmosphere. He correctly argues that there is no evidence that he pointed his handgun at anyone or threatened anyone with his handgun. As previously discussed, however, the defendant need not brandish or display his handgun in order to be convicted under section 924(c)(1). *Meggett,* 875 F.2d at 29. The presence of a plainly visible and readily accessible loaded handgun—with a glazer round in the chamber to boot—certainly "emboldened" the defendant, allowing him to protect himself or intimidate others during his cocaine transactions. *See Coburn,* 876 F.2d at 375. Such evidence is sufficient to establish the

relational element in section 924(c)(1). The court thus concludes that the government has proved beyond a reasonable doubt that the defendant's handgun was used "in relation to" the underlying drug offense.

The government must lastly satisfy the scienter requirement under section 924(c)(1). In *Wilson,* the Fifth Circuit held that the requisite mental state for a violation of section 924(c)(1) is knowledge of the facts constituting the offense. 884 F.2d at 179. The facts constituting the offense are not disputed by the defendant. He knew the handgun was loaded and on the nightstand next to his bed. He also knew eight ounces of cocaine and drug paraphernalia were located in the same room near the handgun. He also does not dispute that he conducted cocaine transactions in this same room. Based upon these undisputed facts, the court finds that the government has established beyond a reasonable doubt that the defendant had knowledge of the facts constituting the offense.

The court notes that the defendant has attempted to inject an additional element into section 924(c)(1). He has insisted throughout these proceedings that he was in lawful possession of the handgun and was merely exercising his constitutional right to bear arms. The 1984 amendments to section 924(c)(1) omitted the element of unlawful possession. Persons who are licensed to carry firearms are now subject to the provisions of section 924(c)(1). *Poole,* 878 F.2d at 1394. Thus, the government need not prove that the defendant illegally possessed the handgun independent of its involvement in drug trafficking.

The defendant also argues that in construing section 924(c)(1), the court should apply the rule of lenity as stated by the Supreme Court of the United States in *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). Under this rule, ambiguity concerning the ambit of a criminal statute should be resolved in favor of lenity. *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). The touchstone of the rule of lenity therefore is statutory ambiguity. *Bifulco v. United States,* 447 U.S.

381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). On the other hand, if congressional intent is clear, the court cannot "manufacture ambiguity in order to defeat that intent." *Id.* Here, congressional intent is manifestly clear and the total conduct of this defendant falls squarely within the ambit of that intent as clearly expressed by section 924(c)(1) and its legislative history.

### III.

### CONCLUSION

The court concludes that the government has proved beyond a reasonable doubt that the defendant used and carried the .45 caliber handgun during and in relation to the underlying drug offense. Accordingly, the defendant, Glenn Gridley, is found GUILTY beyond a reasonable doubt of violating 18 U.S.C. § 924(c)(1) as charged in Count 7 of the superseding indictment. The sentencing process with reference to Counts 1, 6 and 7 must now go forward according to presently established procedures. IT IS SO ORDERED.