15 F.3d 1091
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Enrique CRUZ-MORENO, Defendant-Appellant.
 No. 92-50523.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 6, 1993.*
Decided Dec. 17, 1993.
 
 Before: FLETCHER, PREGERSON, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Appellant Enrique Cruz-Moreno appeals his conviction following a jury trial for carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c). The appeal is premised in part on claimed insufficient evidence and claimed erroneous jury instructions. He also appeals his 93 month sentence for the firearm count and for four counts of possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a), counts to which he pled guilty. This part of the appeal is premised on the district court's refusal to reduce his base offense level two points for his asserted "minor participant" role under Sentencing Guideline Sec. 3B1.2. We affirm.
 
 BACKGROUND
 
 3
 Appellant Cruz-Moreno was arrested on July 9, 1991, for selling four and one-half ounces of cocaine to undercover Santa Ana Police Officer Daniel Perales. Before the arrest, Perales had telephoned Cruz-Moreno to arrange the cocaine purchase. Cruz-Moreno agreed to deliver the drugs to Officer Perales at a location where Perales had purchased smaller quantities of cocaine from Cruz-Moreno on June 20, 1991 and June 25, 1991. Within ten minutes, Cruz-Moreno arrived at the location, exited his car, and got into Officer Perales' car. Appellant then asked to see the money, but Perales said that first he wanted to see the cocaine. Both men went to Appellant's car. Cruz-Moreno instructed co-defendant Carlos Lares Gomez, who was seated in the front passenger seat, to show Perales the contents of a brown paper bag that Gomez was holding which appeared to contain cocaine. Officer Perales took the bag and said that he would get the money out of his car. As Perales walked back to his car, he gave the arrest signal to awaiting officers.
 
 
 4
 Cruz-Moreno ran as the uniformed officers approached. The officers chased Appellant for approximately two blocks before taking him into custody. Officer Tammy Franks discovered a loaded .22 caliber semi-automatic pistol in Cruz-Moreno's waistband while searching him pursuant to his arrest.
 
 
 5
 On that same day, police officers executed a search warrant at Cruz-Moreno's apartment, and found cocaine, drug trafficking paraphernalia, and a gun.
 
 
 6
 At the police station, Appellant admitted that he sold cocaine to Officer Perales on the three occasions, and that he owned the items discovered at his apartment. He further stated that he had been selling drugs for approximately four months. Appellant gave no explanation in response to questions about why he was carrying the gun during the cocaine transaction.
 
 
 7
 Before trial, Cruz-Moreno pled guilty to counts one, three, four, and five of the indictment charging him with possession with intent to distribute cocaine, but pled not guilty to count two, charging him with carrying a firearm during and in relation to a drug trafficking crime.
 
 
 8
 At trial, Cruz-Moreno testified that it was a mere coincidence that he was carrying the loaded gun during the July 9, 1991 drug sale. He stated that he had borrowed the gun from a relative three days earlier to go target shooting, and that he was going to his relative's house to return it as soon as he finished conducting the drug deal with Perales. He further testified that July 9, 1991 was the first time he had ever carried a gun, and explained that he had not come forward with the exculpatory explanation when asked about the gun following his arrest because he was nervous.
 
 
 9
 Regarding the gun's location, Appellant said that he had carried the gun in his waistband because "it just seemed the easiest thing to do to put it in my waistband." (R.T. at 57.) He further testified that he had not put it in his car trunk or glove compartment because he was in too big a hurry. In addition, he stated that he had loaded the gun because "[i]t just seemed the easiest thing to do, to just put the clip in." (R.T. at 57.)
 
 
 10
 The Government and Appellant submitted a joint set of jury instructions. In addition, Cruz-Moreno submitted a proposed jury instruction which stated that the mere presence of a firearm during a drug transaction is insufficient to support a conviction under Section 924(c)(1). The district court declined to give the instruction, finding that the Ninth Circuit instruction for possession of a firearm during or in relation to a drug trafficking crime was adequate. The jury found Cruz-Moreno guilty of the possessions charge in count two following two and one-half days of deliberation.
 
 
 11
 The Probation Office Presentence Report showed Appellant's guideline range to be 27 to 33 months incarceration on the drug counts and 60 months incarceration consecutive on the firearm count. The offense level based on the amount of drugs was 18, and Appellant fell into criminal history category III. The Probation Office recommended a two point downward adjustment for acceptance of responsibility.
 
 
 12
 Prior to his sentencing hearing, Cruz-Moreno filed a position paper requesting a two point reduction in his base offense level, alleging that he played a minor role in the offenses, pursuant to Sentencing Guideline Sec. 3B1.2. The district court rejected Appellant's argument, finding the reduction inappropriate on the facts of the case. The district court sentenced Cruz-Moreno to 33 months on counts one, three, four, and five, and 60 months to be served consecutively on count two, plus three years of supervised release. This sentence reflects the Probation Office's suggested two point downward adjustment for acceptance of responsibility.
 
 I. REJECTION OF PROPOSED JURY INSTRUCTION
 
 13
 On appeal Cruz-Moreno contends that the district court erred in refusing to give his proposed jury instruction on the firearms charge. Specifically, he argues that the instruction given to the jury regarding 18 U.S.C. Sec. 924(c) inadequately defined the element of possessing a firearm "in relation to" a narcotics trafficking offense. We review a district court's formulation of jury instructions for an abuse of discretion. United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992); United States v. Linn, 880 F.2d 209, 217 (9th Cir.1989). "Whether a jury instruction misstates elements of a statutory crime is a question of law reviewed de novo." Johnson, 956 F.2d at 199. The instructions should be viewed as a whole in the context of the entire trial to determine if they were misleading or inadequate. United States v. Wood, 943 F.2d 1048, 1052 (9th Cir.1991). We find that the district court properly denied Cruz-Moreno's proposed instruction.
 
 
 14
 Appellant Cruz-Moreno was charged with violating 18 U.S.C. Sec. 924(c), which provides in pertinent part: "Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...."
 
 
 15
 The instruction proposed by Cruz-Moreno provided: "The mere presence of a firearm during a drug transaction is insufficient to support a conviction under Section 924(c)(1)." The district court declined this instruction, and instead gave the following instruction.
 
 
 16
 The defendant is charged in Count 2 of the Indictment with carrying a firearm during and in relation to a drug trafficking crime in violation of Section 924(c) of Title 18 of the United States Code.
 
 
 17
 In order for defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt.
 
 
 18
 First, the defendant knowingly and intentionally possessed with intent to distribute approximately 125.1 grams of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, and second, the defendant knowingly carried a .22 caliber semi-automatic pistol during and in relation to a drug trafficking crime.
 
 
 19
 .... You have been instructed that the government must establish that the firearm at issue was related to or played a role in the drug trafficking crime. To carry or use a firearm in relation to a drug trafficking crime means to have a firearm available to assist or aid in the commission of that drug trafficking crime.
 
 
 20
 In determining whether the defendant used a firearm in relation to a drug trafficking crime, you may consider all the factors received into evidence in the case, including the nature of the underlying drug trafficking crime, the proximity of the defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.
 
 
 21
 The government is not required to show that the defendant actually displayed or fired the weapon. A firearm may be considered available to assist or aid in the commission of a drug trafficking crime if its physical proximity during the commission of the drug trafficking crime supports an inference that the firearm emboldened the defendant to commit the drug trafficking crime.
 
 
 22
 The term embolden is defined as providing the defendant the opportunity or ability to display or discharge the firearm to protect himself or intimidate others, whether or not such a display or discharge in fact occurred.
 
 
 23
 Whether or not the firearm emboldened the defendant is for you to decide. There is no specific proximity in terms of feet, yards, or miles that establishes emboldening.
 
 
 24
 Appellant contends that the trial court rejected his proposed instruction and instead gave the instruction proposed by the Government. This misstates the record. Although the trial court declined to give the Appellant's proposed additional instruction, the instruction given, which sets forth the statutory requirements for a conviction under Section 924(c), was submitted by both parties in a set of joint proposed jury instructions. We agree with the trial court's ruling that this instruction adequately states the statutory elements required for conviction, and that Appellant's "mere presence" theory could have been adequately addressed in his argument to the jury.
 
 
 25
 Cruz-Moreno cites United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985), as supporting his contention that the term "in relation to" must be "further defined" by the trial court when there is a significant possibility that the jury might have acquitted the defendant had that element been considered or when the defendant requests such an instruction. Appellant misstates the law. In Stewart, the trial court instructed the jury that they were only required to find that a firearm was present during the commission of the alleged felony. We reversed, because the trial court omitted any instruction regarding the "in relation to" element. Id. "The relation between the firearm and the underlying offense is an essential element of the crime, and failure to instruct upon it warrants reversal where there is a significant possibility the jury might have acquitted if it had considered the matter." Id. The instruction given by the district court at Cruz-Moreno's trial, which thoroughly explained the "in relation to" element, completely comports with our holding in Stewart.
 
 
 26
 Appellant also cites United States v. Phelps, 877 F.2d 28 (9th Cir.1989), as requiring more than the mere presence of a firearm, or a simple "but-for" causal relationship between the underlying felony and the firearm, to trigger Section 924(c). This case is inapposite. In Phelps, the Government conceded that the unloaded firearm was brought along on a drug deal only to be used as an item of barter for the drugs being purchased. We concluded that under those facts mere presence was insufficient to support a conviction under Section 924(c).
 
 
 27
 Moreover, the Supreme Court has recently foreclosed this argument. In Smith v. United States, 113 S.Ct. 2050, 2058-59 (1993), the Court held that using a firearm as barter for drugs satisfied the "in relation to" element of Sec. 924(c). The gun's presence was "not the product of happenstance," because " 'the gun ... was an integral part of the transaction.' " Id. at 2059 (citing United States v. Phelps, 895 F.2d at 1281, 1283 (9th Cir.1990) (Kozinski, J., dissenting from denial of rehearing en banc)).
 
 
 28
 More to the point is our holding in United States v. Perez, 989 F.2d 1111 (9th Cir.1993) facilitate a drug trafficking crime given risks of conducting illegal drug transactions and the fact that guns are frequently used in the drug trade. United States v. Power, 881 F.2d 733, 736-37 (9th Cir.1988), cert. denied, 488 U.S. 943 (1988); United States v. Stewart, 779 F.2d at 539.
 
 
 29
 Cruz-Moreno argues that no direct evidence was presented to show that he was carrying the gun in relation to the drug transaction, because no evidence was presented to refute his and his relative's testimony about the gun being used only for target practice. The record does not support this argument.
 
 
 30
 First, a jury might reasonably reject Appellant's testimony that he had never before carried a gun and that its presence was merely coincidental. Logically, it is unlikely that someone who was inexperienced with guns would carry a loaded gun in the waistband of his pants because it was "easiest" and he was "in a hurry." (R.T. at 57.) In addition, a jury might reject Appellant's testimony that he failed to give his exculpatory story about the gun to the police during questioning following his arrest because he was nervous that carrying a gun was illegal, when he admitted during that same interview to illegally selling drugs on three separate occasions.
 
 
 31
 Moreover, there were numerous contradictions between Cruz-Moreno's testimony and other evidence presented at trial. Cruz-Moreno testified that when he was arrested, this was the first conflicts between the trial testimony and earlier police interviews given by Appellant.
 
 
 32
 But more important, even if Cruz-Moreno's characterization of his and Gomez's roles are true, Cruz-Moreno is not entitled to a reduction because we have held that acting as a courier in a drug deal is sufficient to deny a defendant minor participant status. In United States v. Zweber, 913 F.2d 705 (9th Cir.1990), we found that the defendant's conduct of delivering the drugs and receiving the money "demonstrat[ed] that he was trusted with responsibility in the deal" sufficient to deny the requested reduction as a minor participant. Id. at 710. Cruz-Moreno's conduct was certainly no less culpable than that of the defendant in Zweber.
 
 
 33
 Second, Cruz-Moreno has not shown that he is any less culpable than the average person sentenced for the crime he committed. Appellant states that he was less culpable than other drug dealers because he was only charged with possessing 166 grams of cocaine ("an amount hardly indicative of large-scale cocaine distribution"). (A.O.B. at 27.) However, he was not sentenced as a large scale distributor. Cruz-Moreno was sentenced appropriately based on the amount of cocaine he sold to Officer Perales. Thus, on the record before us, we do not find that the district court erred in denying Appellant's request for a downward adjustment.
 
 
 34
 AFFIRMED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3