Justice Breyer,
dissenting.
The statute before us imposes a mandatory 10-year sentence on any person who “carries an explosive during the commission of any [federal] felony.” 18 U. S. C. § 844(h)(2). The Ninth Circuit interpreted the statute as requiring a “re *278 lation” between the explosives carrying and the felony (here, making a false statement to a customs officer), such that the explosives carrying “ ‘facilitated’ ” or “aided” the commission of the felony. 474 F. 3d 597, 604 (2007). The Court interprets the statute to the contrary. It holds that the statute requires no more than a “temporal link” between the explosives carrying and the felony, that is to say, the two need only have occurred at the same time. See ante, at 274. I cannot agree with either interpretation.
I
My problem with the Court’s interpretation is that it would permit conviction of any individual who legally carries explosives at the time that he engages in a totally unrelated felony. “Explosives,” the statute tells us, includes not only obviously explosive material such as “gunpowders” and “dynamite” but also any “chemical compounds” or “mixturéis]” or “device[s]” whose “ignition by fire, by friction, by concussion” or other means “may cause an explosion.” 18 U. S. C. §844(j). And that definition encompasses such commonplace materials as kerosene, gasoline, or certain fertilizers. Moreover, the “carr[ying]” to which the statute refers includes carrying that is otherwise legal. Further, the statute applies to the carrying of explosives during “any” federal felony, a category that ranges from murder to mail fraud. See § 1111 (2000 ed. and Supp. V); § 1341 (2000 ed., Supp. V).
Consequently the Court’s opinion brings within the statute’s scope (and would impose an additional mandatory 10-year prison term upon), for example, a farmer lawfully transporting a load of fertilizer who intentionally mails an unauthorized lottery ticket to a friend, a hunter lawfully carrying gunpowder for shotgun shells who buys snacks with a counterfeit $20 bill, a truckdriver lawfully transporting diesel fuel who lies to a customs official about the value of presents he bought in Canada for his family, or an accountant *279 who engaged in a 6-year-long conspiracy to commit tax evasion and who, one day during that conspiracy, bought gas for his lawnmower. In such instances the lawful carrying of an “explosive” has nothing whatsoever to do with the unlawful felonies. I cannot imagine why Congress would have wanted the presence of totally irrelevant, lawful behavior to trigger an additional 10-year mandatory prison term.
The statute’s language does not demand such an interpretation. I agree with the majority that the word “during” requires a “temporal link.” See ante, at 274. But a statement that uses the word “during” may or may not imply other limitations as well, depending upon the context in which the statement is made. Thus, when I tell a friend from Puerto Rico, “I wear gloves during Washington’s winter,” he does not think I mean baseball mitts. Rather, I imply (and he understands) a relation or link between the gloves and the winter. When I say to a group of lawyers, “I take notes during oral argument,” I imply (and they understand) that the notes bear a relation to the law being argued. But when I say, “I called my brother during the day,” I do not imply any particular relation (other than a temporal relation) between the day and the phone call. Context makes the difference.
Here, the statute’s context makes clear that the statutory statement does not cover a “carrying]” of explosives that is totally unrelated to the “felony.” The lengthy mandatory minimum sentence is evidence of what the statute’s legislative history separately indicates, namely, that Congress sought to criminalize and impose harsh penalties in respect to the “intentional misuse of explosives,” see H. R. Rep. No. 91-1549, p. 38 (1970) (hereinafter H. R. Rep.) (emphasis added). A person who lawfully carries explosives while committing some other felony does not even arguably “misuse” those explosives unless the carrying has something to do with the other felony. Nor in the absence of some such rela *280 tionship is there any obvious reason to impose an additional mandatory 10-year sentence on a person who unlawfully carries explosives while committing some other felony.
Similar reasoning led the Ninth Circuit in 1985 to interpret a related statute, which punished the carrying of a firearm “during” the commission of a federal felony, as requiring a significant relationship between the firearms carrying and the other felony. See United States v. Stewart, 779 F. 2d 538. Justice (then-judge) Kennedy recognized that “‘Congress did not intend to penalize one who happens to have a gun in his possession when he commits an entirely unrelated offense.’” Id., at 540 (quoting United States v. Moore, 580 F. 2d 360, 362 (CA9 1978)). In my view, that same reasoning should apply when we interpret the explosives statute, which was originally modeled on the firearms statute. See H. R. Rep., at 69 (the explosives statute “carries over to the explosives area the stringent provisions of the Gun Control Act of 1968 relating to the use of firearms and the unlawful carrying of firearms to commit, or during the commission of a Federal felony”).
I recognize that the language of the firearms statute now differs from the language of the explosives statute in an important way. The firearms statute originally punished (with a l-to-10-year sentence) a person who “carries a firearm unlawfully during the commission of any [federal] felony.” 18 U. S. C. § 924(c)(2) (1964 ed., Supp. IV). In 1984, Congress amended the firearms statute by providing a mandatory minimum punishment of five years and by striking the word “unlawfully.” § 1005(a), 98 Stat. 2138. When it did so, Congress also added to the statute specific words of limitation, namely, the words “and in relation to” (so that the statute covered any person who carried a firearm “during and in relation to” the commission of a “felony”). Ibid.
The words “in relation to” do not appear in the explosives statute. But neither did those words appear in the pre-1984 *281 version of the firearms statute that was the subject of the Ninth Circuit opinion in Stewart (yet the Ninth Circuit nonetheless found an implicit relational requirement). And the fact that these words now appear in the firearms statute but not the explosives statute cannot make the determinative difference.
The history of the firearms statute makes clear that the reason Congress added to that statute the words “in relation to” has to do with Congress’ decision to remove from the firearms statute the word “unlawfully.” By removing that word, Congress indicated that the firearms statute should apply to “persons who are licensed to carry firearms” but who “abuse that privilege by committing a crime with the weapon.” S. Rep. No. 98-225, p. 314, n. 10 (1983). At the same time, however, Congress believed that the statute should not apply where the firearm’s presence “played no part in the crime, such as a gun carried in a pocket and never displayed or referred to in the course of a pugilistic barroom fight.” Ibid. The addition of the words “in relation, to” made this dual objective textually clear.
The absence of the words “in relation to” here must lead us to ask (but it does not answer) the question: Did Congress intend something different in respect to the explosives statute? There are strong reasons for thinking it did not. Congress, after all, amended the explosives statute in response to the Department of Justice’s express request to “bring” the explosives statute “in line with” the firearms statute. See 131 Cong. Rec. 14166 (1985); see also 134 Cong. Rec. 32700 (1988) (statement of Sen. Biden) (noting that the purpose of amending the explosives statute was to “bring it in line with similar amendments [previously] adopted . . . with respect to the parallel offense of using or carrying a firearm during the commission of federal offenses”). Congress accordingly increased the mandatory minimum punishment to five years and struck the word “unlawfully.” See § 6474(b), *282 102 Stat. 4379-4380. If Congress, in neglecting to add the words “in relation to,” sought to create a meaningful distinction between the explosives and firearms statutes, one would think that someone somewhere would have mentioned this objective.
Further, to read the two statutes differently would break the very parallel treatment of firearms and explosives that led Congress, at the Department of Justice’s urging, to amend the explosives statute in the first place. It would produce the peculiar and unfair results I previously mentioned. See supra, at 278-279. It would conflict with Congress’ original rationale for enacting the explosives statute (to punish the misuse of explosives). And it would risk incoherent results: Why would Congress wish not to punish a policeman for carrying an unrelated revolver during the commission of a felony, but then wish to punish that same policeman for carrying unrelated gunpowder for unrelated bullets?
At the same time one can explain the absence of the words “in relation to” in less damaging ways. The legislative drafters of the explosives amendment may have assumed that prior judicial interpretation (namely, United States v. Stewart, supra) made the words “in relation to” unnecessary. See Lorillard v. Pons, 434 U. S. 575, 580 (1978) (“Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change”). Or, as the majority recognizes, the omission of the language may reflect simple drafting inadvertence. See ante, at 277.
I concede that the presence of a phrase in one statute and the absence of the same phrase in another related statute can signal an intended difference in relative statutory scope. But that is not inevitably so. Cf. Russello v. United States, 464 U. S. 16, 23 (1983) (noting only a presumption that Congress has acted intentionally and purposely if it “includes particular language in one section of a statute but omits it in another section of the same Act” (internal quotation marks *283 omitted)). And here the circumstances that I have mentioned make this a ease in which that linguistic fact is not determinative.
No more here than elsewhere in life can words alone explain every nuance of their intended application. Context matters. And if judges are to give meaningful effect to the intent of the enacting legislature, they must interpret statutory text with reference to the statute’s purpose and its history.
The Court, with its decision today, makes possible the strange results I describe above precisely because it resolves the statutory interpretation question by examining the meaning of just one word in isolation. In context, however, the language excludes from the statute’s scope instances in which there is no significant relation between the explosives carrying and the felony. A contextual interpretation furthers Congress’ original purpose, is less likely to encourage random punishment, and is consistent with the statute’s overall history. As a result, like the Ninth Circuit, I would read the statute as insisting upon some (other than merely temporal) relationship between explosives carrying and “felony.”
II
At the same time, I cannot agree with the Ninth Circuit that the statute restricts the requisite relationship to one in which the carrying of the explosives “‘facilitated’” (or “aided”) the felony. 474 F. 3d, at 604. In my view, the statute must also cover a felony committed to facilitate the carrying of explosives. Why should it matter in which direction the facilitating flows? Either way, there is a relation between the carrying of explosives and the other felony. Either way, one might reasonably conclude that the presence of the explosives will elevate the risks of harm that otherwise would ordinarily arise out of the felony’s commission. Either way, one might consider the explosives “misused.” Thus, I believe the statute applies if the felony, here, the *284 making of a false statement to a customs officer, facilitated or aided the carrying of explosives. And I would remand the case for the Circuit to determine the presence or absence of that relevant relation.
For these reasons, I respectfully dissent.