**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

v.

AHMED RESSAM, also known as
Benni Antoine Noris,
    *Defendant-Appellee.*

No. 05-30422

D.C. No.
CR-99-00666-001-
JCC

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

AHMED RESSAM, also known as
Benni Antoine Noris,
    *Defendant-Appellant.*

No. 05-30441

D.C. No.
CR-99-00666-001-
JCC

OPINION

Appeals from the United States District Court
for the Western District of Washington
John C. Coughenour, Senior District Judge, Presiding

Argued and Submitted
November 13, 2006—Seattle, Washington

Filed January 16, 2007

Before: Arthur L. Alarcón, Pamela Ann Rymer, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Rymer;
Partial Concurrence and Partial Dissent by Judge Alarcón

## COUNSEL

John McKay, United States Attorney, Seattle, Washington, for the plaintiff-appellant-cross-appellee.

Thomas W. Hillier, II, Federal Public Defender, and Michael Filipovic, First Assistant Federal Public Defender, Seattle, Washington, for the defendant-appellee-cross-appellant.

## OPINION

RYMER, Circuit Judge:

Ahmed Ressam trained with members of al Qaeda in Afghanistan and hatched a plot to detonate explosives at Los Angeles International Airport (LAX) in the days before the

new Millennium. He was charged with, and convicted of, nine counts of criminal activity connected to this plot. Ressam challenges his conviction on one of these counts, Count 9, for carrying an explosive during the commission of a felony — making false statements on a customs declaration — in violation of 18 U.S.C. § 844(h)(2). The issue is whether § 844(h)(2) must be read to include a relational element such that the crime is carrying an explosive during *and in relation to* commission of a felony. We previously construed the statute upon which § 844(h)(2) was modeled, 18 U.S.C. § 924(c), to require this relational element, *United States v. Stewart*, 779 F.2d 538, 539-40 (9th Cir. 1985), even though it, too, lacked the phrase "and in relation to." We are constrained to follow *Stewart*'s analysis here and conclude that § 844(h)(2) requires a relationship between the underlying crime and the act of carrying an explosive. As the jury was neither instructed that such a relationship was a required element of the offense, nor did the government offer evidence that Ressam's explosives were used to facilitate his false customs declaration, his conviction on Count 9 must be reversed.

Ressam was exposed to a sentence of some 65 years, but after trial entered into a cooperation agreement with the United States according to which he would not seek, and the government would not recommend, a sentence of less than 27 years. Although he provided testimony and participated in numerous debriefings, Ressam ultimately stopped cooperating. As a result, the government recommended a sentence of 35 years. Ressam argued for a sentence of 120 months, and the district court imposed a sentence of 22 years. The government appeals this sentence as unreasonable in light of Ressam's failure to continue to assist the government and the district court's lack of explanation for what the government believes is an extreme departure. Given reversal of the conviction on Count 9 and its corresponding mandatory minimum sentence of 10 years, we vacate the entire sentence so that the district court can resentence in light of this decision and developments in the law of sentencing in the meantime.

I

Ressam is an Algerian citizen. He left Algeria in 1992 for France, where he was arrested on an immigration-related violation. Ressam then obtained a genuine French passport under the name of Anjer Tahar Medjadi and fled for Montreal in February of 1994. Using his true name, Ressam sought asylum in Canada, claiming that he had been falsely accused by the Algerian government of aiding Islamist insurgents and had served 15 months in prison. His petition was denied, but Ressam was allowed to stay in Canada because of a moratorium on deportations to Algeria.

Ressam met an al Qaeda operative in Montreal named Abderraouf Hannachi sometime in 1998. Hannachi recruited individuals to train in al Qaeda camps in Afghanistan and to participate in jihadist activities. Using a forged Catholic baptismal certificate, Ressam obtained a Canadian passport in the name of Benni Antoine Noris in order to travel to Afghanistan. In March of 1998, Ressam — traveling as Benni Noris — left Montreal for Karachi, Pakistan.

Once in Pakistan, Ressam met Abu Zubaydah, who arranged Ressam's travel to the Khalden training camp in Afghanistan. Ressam stayed with an Algerian terror group at Khalden for six months. During that time, he received firearms training and learned how to fire a rocket-propelled grenade launcher. Al Qaeda operatives at the camp taught Ressam to make explosive charges and showed him how to detonate particular types of plastic explosives. Ressam also learned how to destroy infrastructure targets, such as power plants, military installations, railroads, and airports. He later went to a second camp near Jalalabad where he received further training in explosives. It was during this time that Ressam and others hatched the plot to target a U.S. airport to coincide with the Millennium.

Ressam returned to Canada via LAX in February of 1999. He carried bomb-making notes, two chemicals used to manufacture explosives, and $12,000 in cash. Ressam resettled in Montreal where he continued to plan the LAX attack. On November 17, 1999, Ressam and Abdelmajid Dahoumane, another member of the Montreal al Qaeda cell, traveled to Vancouver, British Columbia. Ressam and Dahoumane rented a Chrysler 300M and checked into a motel. On December 14, 1999, Ressam and Dahoumane loaded the trunk of the rental car with explosives, electronic timing devices, detonators, fertilizer, and aluminum sulfate. They drove to the ferry terminal at Tswassen, British Columbia. Dahoumane returned by bus to Vancouver while Ressam, using his Benni Noris passport, boarded the MV Coho, a ferry bound for Port Angeles, Washington. U.S. Customs inspectors[1] searched the trunk of Ressam's car as part of a pre-screening process prior to departure. They did not discover the explosives which were hidden in the trunk's spare tire well.

The MV Coho docked at Port Angeles about 6:00 p.m. Customs Inspector Diana Dean was finishing her day shift when Ressam drove his vehicle off the ferry. He steered the car into the middle lane where Dean stopped him for inspection. Dean asked Ressam about his travel plans. His answers indicated that he was nervous and agitated. Dean asked Ressam to complete a customs declaration — which he signed as Benni Noris. Dean directed Ressam to a secondary inspection station where Customs inspectors searched the vehicle. The inspectors discovered what were later identified as the bomb's component parts. At the time, they believed Ressam was attempting to smuggle narcotics into the country.

---

[1]The Homeland Security Act of 2002, Pub. L. No. 107-296, § 403, 116 Stat. 2135, transferred the U.S. Customs Service from the Treasury Department to the Department of Homeland Security. The agency is now known as U.S. Customs and Border Protection. We refer to the agency as the Customs Service because Ressam was apprehended prior to the reorganization.

The substances were inventoried and tested. Agents found two primary explosives (hexamethylene triperoxide diamine (HMTB) and cyclotrimethylene trinitramine (RDX)) in a Tylenol pill bottle and zinc lozenge case, a secondary explosive (ethylene glycol dinitrate (EGDN)) poured into two olive oil jars, fertilizer which can provide fuel for an explosion, and aluminum sulfate. Agents also found Ressam's fingerprints on four plastic boxes that contained timing devices. EGDN is a powerful explosive that packs twice the punch of the equivalent amount of TNT. The detonation of the bombs during the holiday travel rush at LAX would likely have killed and injured hundreds of people.

On February 14, 2001, the grand jury returned a nine-count Second Superceding Indictment against Ressam.[2] It charged Ressam with an act of terrorism transcending a national boundary, placing explosives in proximity to the ferry terminal, possessing false identification, using a fictitious name, falsely identifying himself on a customs declaration form, the smuggling of and transportation of explosives, the illegal possession of a destructive device, and carrying an explosive during the commission of a felony, namely, signing the customs form as Benni Noris. The district court ordered the trial moved from Seattle to Los Angeles due to pre-trial publicity.

Ressam filed a Federal Rule of Criminal Procedure 29 motion on Count 9, arguing that the act of carrying explosives had not played a role in the false statement made on the customs form. The district court denied the motion. Ressam also objected to the government's proposed jury instruction on Count 9 because it lacked a relational requirement, which the district court overruled. On April 6, 2001, the jury convicted Ressam on all counts.

---

[2]Dahoumane, who was a fugitive at the time, was also charged in four of the counts. Algerian security services arrested Dahoumane in March 2001.

Ressam's sentencing was delayed until July 27, 2005. Ressam provided extensive cooperation until early 2003, when he basically stopped cooperating. In February of that year Ressam asked the court to proceed with sentencing, but at the court's instigation, the government filed a motion under U.S.S.G. § 5K1.1 to allow a downward departure from the Guidelines range for substantial assistance. Still, Ressam did not resume cooperation. The court set a hearing for April 27, 2005, but decided on its own to give Ressam three more months in order to be able to give him as much credit as possible for cooperation. No additional cooperation was forthcoming before the reconvened hearing in July. The district court imposed a sentence of 22 years in custody and instructed the government "to allocate that according to the statutory minimums among the counts in consecutive and concurrent as necessary to arrive at a total of 22 years." It expressed no view on an appropriate Guidelines range, including the effect of the factors bearing on substantial assistance to authorities in § 5K1.1, and offered no explanation for imposition of the particular sentence in consideration of the factors in 18 U.S.C. § 3553(a).

The United States appeals the sentence, and Ressam cross-appeals his conviction on Count 9.

II

Ressam's cross-appeal boils down to what 18 U.S.C. § 844(h)(2) means when it punishes one who "carries an explosive during the commission of any felony which may be prosecuted in a court of the United States," with a mandatory term of imprisonment of 10 years. Does it criminalize carrying an explosive during the commission of another felony, or does it criminalize carrying an explosive during and *in relation to* that other felony? The answer matters in this case because the government offered no evidence that Ressam's carrying the explosives in any way facilitated his falsifying the customs declaration form.

**[1]** This is an issue of first impression for us, although the Third and Fifth Circuits have declined to interpret § 844(h)(2) as requiring that the explosives be carried in relation to the underlying felony. *See United States v. Rosenberg*, 806 F.2d 1169, 1179 (3d Cir. 1986); *United States v. Ivy*, 929 F.2d 147, 151 (5th Cir. 1991) (following *Rosenberg* in an alternative holding). As these courts see it, "the plain everyday meaning of 'during' is 'at the same time' or 'at a point in the course of.' It does not normally mean 'at the same time and in connection with. . . .' It is not fitting for this court to declare that the crime defined by § 844(h)(2) has more elements than those enumerated on the face of the statute." *Rosenberg*, 806 F.2d at 1178-79 (internal citation omitted); *Ivy*, 929 F.2d at 151 (citing *Rosenberg*, 806 F.2d at 1177). *But see Rosenberg*, 806 F.2d at 1180-1183 (Higginbotham, J., dissenting).

**[2]** Unlike our colleagues in other circuits, we do not write on a clean slate. We interpreted a similar provision in the firearms statute, 18 U.S.C. § 924(c), in *United States v. Stewart*, 779 F.2d 538, 539-540 (9th Cir. 1985), *overruled in part on other grounds by United States v. Hernandez*, 80 F.3d 1253, 1257 (9th Cir. 1996). Section 924(c) as written when Stewart committed his offense provided that it was a crime to "carr[y] a firearm unlawfully during the commission of any felony. . . ." 18 U.S.C. § 924(c)(2) (1982). Later, in 1984, it was amended to substitute for the word "during" the phrase "during *and in relation to*." 18 U.S.C. § 924(c) (1985) (emphasis added). The word "unlawfully" was also deleted. Our review of the legislative history indicated that the new "in relation to" language was not intended to create an element of the crime that did not previously exist, but rather was intended to make explicit what had been implicit before — that a relation between the firearm and the underlying felony was required. *Stewart*, 779 F.2d at 539-40. The legislative history also indicated that when "unlawfully" was eliminated, the "in relation to" language was added to allay concern that a person could be prosecuted for committing an entirely unrelated crime while in possession of a firearm, but the "in relation to" lan-

guage did not alter the scope of the statute. *Id.* As then-Judge Kennedy explained, "the evident purpose of the [original] statute was to impose more severe sanctions where firearms facilitated, or had the potential of facilitating, the commission of a felony." *Id.* at 540. "That purpose necessarily implies some relation or connection between the underlying criminal act and the use or possession of the firearm." *Id.* Consequently, we interpreted the statute that applied to Stewart as if it contained the requirement that the firearm be possessed "during and in relation to" the underlying crime. Put differently, the relational requirement "has always been an implicit element of the crime even before Congress amended § 924 to include the specific 'in relation to' language." *United States v. Mendoza*, 11 F.3d 126, 129 (9th Cir. 1993) (describing *Stewart*'s holding).

**[3]** While *Rosenberg* and *Ivy* were free to (and did) reject *Stewart*'s analysis of § 924(c), we cannot. Therefore, we must decide whether a relational requirement has always been an implicit element of § 844(h)(2), as well. The two sections have much in common, and we are mindful of the canon *in pari materia* which provides that similar statutes are to be interpreted in a similar manner unless legislative history or purpose suggests material differences. *See, e.g., Fogerty v. Fanatasy, Inc.*, 510 U.S. 517, 523-24 (1994); *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 104-106 (1993); *U.S. West Comm., Inc. v. Hamilton*, 224 F.3d 1049, 1053 (9th Cir. 2000).

**[4]** Section 844 was enacted as part of Title XI of the Organized Crime Control Act of 1970. Pub. L. No. 91-452, 84 Stat. 922, 956. Its purpose was to align explosives with the firearms provisions in § 924(c), and it was modeled after § 924(c). *United States v. Mueller*, 463 F.3d 887, 891 (9th Cir. 2006). The House Report explains that "Section 844(h) carries over to the explosives area the stringent provisions of the Gun Control Act of 1968 [codified at 18 U.S.C. § 924(c)] relating to the use of firearms and the unlawful carrying of

firearms to commit, or during the commission of a federal felony." H.R. Rep. 91-1549, *reprinted in* 1970 U.S.C.C.A.N. 4007, 4046. Its original text was identical to the original firearms counterpart that we considered in *Stewart*. Thus, the original version of § 924(c) provided:

> Whoever—
>
> (1)   uses a firearm to commit any felony which may be prosecuted in a court of the United States, or
>
> (2)   carries a firearm unlawfully during the commission of any felony which may be prosecuted in a court of the United States . . .

And the original version of § 844(h) provided:

> Whoever—
>
> (1)   uses an explosive to commit any felony which may be prosecuted in a court of the United States, or
>
> (2)   carries an explosive unlawfully during the commission of any felony which may be prosecuted in a court of the United States . . .

 **[5]** Congress amended § 844(h)(2) in 1988 by striking "unlawfully" in paragraph (2), as the 1984 revisions to § 924(c) had done. Pub. L. No. 100-690, § 6474(b).[3] By contrast with

---

[3]The current version of § 844(h) provides, in pertinent part:

(h)   Whoever—

(1)   uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States, or

(2)   carries an explosive during the commission of any felony which may be prosecuted in a court of the United States, including a felony which provides for an enhanced punishment if com-

the 1984 amendment to § 924(c), however, the word "during" was not replaced with "during and in relation to." The legislative history does not specifically say why "unlawfully" was struck, or why "and in relation to" was not added. The Senate Report simply indicates that the new version strengthened the penalty provisions of § 844(h) for "using or carrying an explosive during the commission of a federal felony, so as to bring it in line with similar amendments adopted in the Comprehensive Crime Control Act of 1984. . . ." S. Rep. at 17367.

**[6]** Because in *Stewart* we did not think addition of the phrase "and in relation to" changed the scope of original § 924(c), we are hard-pressed now to say that its absence changes the scope of § 844(h)(2). In other words, accepting that § 924(c) always had a relational element, as we must, § 844(h)(2) necessarily always had a relational element, too. For this reason, we cannot accord the same weight as the government, and the Third Circuit, give to the fact that § 844(h)(2) was not altered as § 924(c) was to add "and in relation to" language.[4]

Judge Alarcón contends that *Stewart* has been undercut by intervening authority. Yet neither *Stewart*'s holding, nor the "theory or reasoning" underlying the decision, has been called into question by this court sitting en banc or by the United States Supreme Court. The dissent's citation to *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004) — a case interpreting a bankruptcy statute — as supervening authority

---

mitted by the use of a deadly or dangerous weapon or device shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years. In the case of a second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for 20 years.

[4]The government's brief argued that, unlike § 924(c), § 844(h)(2) never contained a requirement that the explosive be carried "*unlawfully* during commission of any felony." However, this assertion is incorrect, as the government has subsequently acknowledged.

is inapposite. *Lamie* did not articulate a new rule of statutory interpretation; it did not construe § 844(h)(2) or § 924(c); and there was no prior construction of a similar statute to contend with. Nothing about its holding, reasoning, or mode of analysis is irreconcilable with *Stewart*'s determination that a relational element was always implicit in the phrase "carries a firearm . . . during." Accordingly, we are obliged to follow *Stewart*'s construction of § 924(c), which served as the template for § 844(h). *See Mueller*, 463 F.3d at 891.

**[7]** Given this interpretation, there is no real dispute that Ressam's conviction on Count 9 cannot stand. The government introduced ample evidence that Ressam falsely signed the customs form as Benni Noris and that he carried explosives in the trunk of his car. Ressam so concedes. However, the evidence adduced at trial does not show that the explosives "facilitated or played a role in the crime" of lying on the customs declaration. *See* Ninth Cir. Model Crim. Jury Instr. No. 8.65; *Stewart*, 779 F.2d at 540 (contrasting Stewart's case with circumstances showing a violation of § 924(c) as interpreted, such as "the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred"). It is not enough for the government to prove that Ressam lied *because* he was smuggling explosives in the trunk of his car. Rather, the government must demonstrate that the explosives aided the commission of the underlying felony in some way. There is no evidence that the explosives emboldened Ressam to lie or that he used them to "protect himself or intimidate others." *Id*. Accordingly, we vacate Ressam's conviction as to Count 9 only.

III

**[8]** The government believes that Ressam's sentence is unreasonable and seeks to have it vacated because the district court failed to balance the cooperation that Ressam provided

against the magnitude of his crimes and his continued aid to terrorists by his failure to complete his promised assistance. We decline to address the merits of the government's position for two reasons. First, Ressam's conviction on Count 9 having been reversed, his sentence on that count necessarily falls as well. The district court articulated no basis upon which we could infer whether its sentence would be the same, or different, without a conviction on this count. We prefer to leave it to the district court in the first instance to arrive at an appropriate sentence on the remaining counts of conviction. Even more significantly, the law applicable to sentencing is in flux. We are rehearing two cases en banc, *United States v. Carty*, 453 F.3d 1214 (9th Cir. 2006) *reh'g en banc granted*, 462 F.3d 1066 (9th Cir. 2006), and *United States v. Zavala*, 443 F.3d 1165 (9th Cir. 2006) *reh'g en banc granted*, 462 F.3d 1066 (9th Cir. 2006), and the United States Supreme Court has granted writs of certiorari in *Claiborne v. United States*, 75 U.S.L.W. 3243, 3246 (U.S. Nov. 3, 2006) (No. 06-5618), and *Rita v. United States*, 75 U.S.L.W. 3243, 3246 (U.S. Nov. 3, 2006) (No. 06-5754), which will have a good deal to say about the sentencing process in the wake of *United States v. Booker*, 543 U.S. 220 (2005). As the district court should have the initial opportunity to impose a sentence consistent with evolving law, we leave it to that court's discretion to defer resentencing until the Supreme Court has decided *Claiborne* and *Rita*, or we have decided *Carty* and *Zavala*.

REVERSED IN PART; VACATED IN PART and REMANDED.

ALARCÓN, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority's decision to reverse Count 9 of the Second Superceding Indictment. I also concur in the majority's decision to vacate the sentence but on

different grounds. I agree with the Government that the sentence imposed by the District Court was unreasonable and an extreme departure from the advisory Sentencing Guidelines.

I

Count 9 reads as follows:

> On or about December 14, 1999, at Port Angeles, within the Western District of Washington, AHMED RESSAM knowingly carried an explosive during the commission of a felony prosecutable in a court of the United States, that is making a false statement to a U.S. Customs Inspector as charged in Count 5 herein.

> All in Violation of Title 18, United States Code, Section 844 (h)(2)

Section 844(h)(2) provides as follows:

> Whoever — . . . (2) carries an explosive during the commission of any felony which may be prosecuted in a court of the United States, . . . shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years.

In Count 5 of the indictment, Mr. Ressam was charged as follows:

> On or about December 14, 1999, at Port Angeles, within the Western District of Washington, in a matter within the jurisdiction of the United States Custom Service, an agency of the United States, AHMED RESSAM did knowingly and willfully make a false, fraudulent, and fictitious material statement and representation; in that the defendant presented to the U.S. Customs inspectors a Customs

Declarations Form #6059B identifying himself as Benni Noris, whereas in truth and fact, as he then well knew, this statement was false in that his true name is AHMED RESSAM. All in violation of Title 18, United States Code, Section 1001.

The district court gave the following instruction to the jury concerning the elements that the Government was required to prove to demonstrate a violation of § 844(h)(2).

The defendant is charged in Count 9 of the indictment with carrying an explosive during the commission of a felony in violation of Section 844(h)(2) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt.

First, the defendant knowingly carried explosive materials; and

Second, the defendant committed the felony of making a false statement to a US Customs Inspector (as charged in Count 5 of the Indictment) while he was carrying those explosive materials.

In his opening brief, Mr. Ressam concedes that "[t]he government did present evidence that Mr. Ressam was carrying explosives in the trunk of the car he was driving at the time he completed and presented the customs form, and that Mr. Ressam falsely identified himself on the form." Opening Brief of Appellant at 18. Mr. Ressam does not argue that the words used by Congress in § 844(h)(2) are ambiguous or lack plain meaning.

The Supreme Court instructed in *Tennessee Valley Authority v. Hill*, 437 U.S. 153 (1978) that: "When confronted with a statute which is plain and unambiguous on its face, we ordi-

narily do not look to legislative history as a guide to its meaning." *Id*. at 184 n.29. In *United States v. Missouri Pac. R. Co.*, 278 U.S. 269 (1929), the Court stated: "where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended." *Id*. at 278.

More recently, in *Lamie v. United States Trustee*, 540 U.S. 526 (2004), Justice Kennedy, writing for the majority, stated:

> The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes. It is well established that when the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms. (internal citations and quotation marks omitted).

*Id*. at 534.

Mr. Ressam argues that we must read the words "in relation to" into the text of § 844(h)(2). He contends that we must reverse because the court refused an instruction he submitted that states as follows:

> The defendant is charged in Count 9 of the Indictment with knowingly carrying an explosive during and in relation to a felony prosecutable in a court of the United States in violation of Section 844(h)(2) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt.
>
> First, the defendant committed the crime of making a false statement to a United States customs inspector as charged in Count 5 of the Indictment;

Second, the defendant knowingly carried an explosive; and

Third, the defendant carried the explosive *during and in relation to the false statement crime* alleged in Count 5 of the Indictment.

A defendant takes such action *in relation to the crime* if the explosive facilitated or played a role in the false statements charge alleged in Count 5.

(emphasis added).

Mr. Ressam's proposed instruction would have required the District Court to add an element to § 844(h)(2) that does not appear in the statute enacted by Congress. Justice Kennedy, in his opinion in *Lamie,* rejected a similar notion:

Petitioner's argument stumbles on still harder ground in the face of another canon of interpretation. His interpretation of the Act—reading the word "attorney" in § 330(a)(1)(A) to refer to "debtors' attorneys" in § 330(a)(1) —would have us read an absent word into the statute. That is, his argument would result "not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope." *Iselin v. United States*, 270 U.S. 245, 251 (1926). With a plain, nonabsurd meaning in view, we need not proceed in this way. "*There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.*" *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978).

Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to

a harsh outcome is longstanding. It results from "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill." *United States v. Locke*, 471 U.S. 84, 95 (1985) (citing *Richards v. United States*, 369 U.S. 1, 9 (1962)).

540 U.S. at 538. (emphasis added).

We lack the constitutional authority to add an element to a criminal statute. That is Congress' function. Our role is merely to interpret what Congress has enacted.

## II

This Court has not previously addressed the question whether a trial court must instruct a jury that, to convict under § 844(h)(2), the Government must prove beyond a reasonable doubt that the defendant carried explosives *during and in relation to* the commission of a felony which may be prosecuted in a court of the United States. The Third and Fifth Circuits have expressly rejected this contention.

In *United States v. Rosenberg*, 806 F.2d 1169 (3rd Cir. 1986), the Third Circuit affirmed a judgment of conviction for a violation of § 844(h)(2), wherein the trial court rejected the defendants' argument that the Government was required to present evidence of a specific connection between the carrying of explosives and the alleged felony. The Third Circuit reasoned as follows:

Section 844(h)(2) by its terms only requires that the government show that the defendant unlawfully carried an explosive "during the commission of any felony." The plain everyday meaning of "during" is "at the same time" or "at a point in the course of." *See*, Webster's Third New International Dictionary 703 (1961). It does not normally mean "at the same time

and in connection with . . . ." It is not fitting for this court to declare that the crime defined by § 844(h)(2) has more elements than those enumerated on the face of the statute. If Congress sees fit to add a relational element to § 844(h)(2), it is certainly free to do so, in the same manner that it added a relational element to § 924(c). Until such time, we will hold that § 844(h)(2) has no relational element, and accordingly, we now hold that the district court correctly denied the defendants' motion to dismiss Count 5.

*Id.* at 1178-79.

The Third Circuit's determination in *Rosenberg* that a federal court cannot read absent words into a statute is faithfully consistent with Justice Kennedy's statement in *Lamie* that federal courts cannot "rewrit[e] rules that Congress has affirmatively and specifically enacted." *Lamie*, 540 U.S. at 538 (quoting *Mobil Oil*, 436 U.S. at 625). In *United States v. Ivy*, 929 F.2d 147 (5th Cir. 1991) the Fifth Circuit, citing the Third Circuit's opinion in *Rosenberg*, "refuse[d] to judicially append the relation element to § 844(h)(2)." *Id.* at 151.

The *Rosenberg* decision was written twenty years ago. Since then, Congress has not amended § 844(h)(2) to add a relational element. Under our constitutional doctrine of the separation of powers, we cannot usurp Congress' authority.

### III

The majority has refused to follow the Third Circuit's decision in *Rosenberg,* and the Fifth Circuit's opinion in *Ivy,* that we lack the authority to add an "in relation to" element to § 844(h)(2). Instead, the majority asserts that it is "constrained" to apply this Court's opinion in *United States v. Stewart*, 779 F.2d 538 (9th Cir. 1985), *overruled in part on other grounds by United States v. Hernandez*, 80 F.3d 1253, 1257 (9th Cir. 1996), which read a relational element into 18

U.S.C. § 924(c). The term "constrain" is defined as "to force by stricture, restriction, or limitation imposed by nature, oneself, or circumstances and exigencies." Webster's Third New International Dictionary 489 (1976). I do not agree with my colleagues that we are forced, by the law of this Circuit, to follow *Stewart* in construing the words expressly and unambiguously set forth by Congress in a separate statute.

> [A] three-judge panel may not overrule a prior decision of the court. That proposition is unassailable so far as it goes, but it does not take into account the possibility that our prior decision may have been undercut by higher authority to such an extent that it has been effectively overruled by such higher authority and hence is no longer binding on district judges and three-judge panels of this court . . . . We hold that the issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.

*Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc).

More recently, in *Ortega-Mendez v. Gonzales*, 450 F.3d 1010 (9th Cir. 2006), Judge Berzon pointed out that "[w]e are 'bound not only by the holdings of [such intervening] decisions but also by their mode of analysis.' " *Id.* at 1019. (quoting *Gill v. Stern* (*In re Stern*), 345 F.3d 1036, 1043 (9th Cir. 2003)). (internal quotations omitted).

In *Stewart*, a three-judge panel of this Court determined that it had the authority to add an element to a criminal statute that was unambiguous by referring to legislative history. We stated: "We interpret [§ 924(c)] as if it contained the requirement that the firearm be possessed 'during and in relation to'

the underlying offense." 779 F.2d at 540. The Supreme Court's subsequent holding in *Lamie* that, where the language is plain, we cannot "read an absent word into the statute," 540 U.S. at 538, undercuts our conclusion in *Stewart* that we had the authority to add a relational element to § 924(c). Accordingly, we are constrained to apply the holding and mode of analysis set forth in *Lamie* and enforce § 844(h)(2) "according to its terms" and not to "rewrit[e] rules that Congress has affirmatively and specifically enacted." *Lamie*, 540 U.S. at 538.

I would affirm the District Court's judgment of conviction with respect to Count 9 by employing the following logical syllogism.

> Section 844(h)(2) provides that "[w]hoever . . . carries an explosive during the commission of any felony which may be prosecuted in a court of the United States . . . shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years."

> It is undisputed that Mr. Ressam was carrying explosives in the trunk of his car when he falsely stated in a Customs Declaration Form #6059B that his name was Benni Noris in violation of 18 U.S.C. § 1001.

> Therefore, Mr. Ressam is subject to the enhanced punishment prescribed in § 844(h)(2) because he was carrying an explosive during the commission of the crime set forth in § 1001.