**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant-*
                *Cross-Appellee,*

        v.

AHMED RESSAM, also known as
Benni Antoine Noris,
            *Defendant-Appellee-*
                *Cross-Appellant.*

Nos. 05-30422
        05-30441

D.C. No.
CR-99-00666-001-
JCC
Western District of
Washington, Seattle

ORDER

Filed June 6, 2007

Before: Arthur L. Alarcón, Pamela Ann Rymer, and
Marsha S. Berzon, Circuit Judges.

Order;
Dissent by Judge O'Scannlain

## ORDER

A majority of the panel has voted to deny the petition for
rehearing and to reject the suggestion for rehearing en banc.
Judge Alarcón would grant the petition for rehearing and
accept the suggestion for rehearing en banc.

The full court has been advised of the suggestion for
rehearing en banc. A judge of the court requested a vote on
whether to rehear the matter en banc. However, the matter
failed to receive a majority of votes of the nonrecused active
judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for rehearing is DENIED and the suggestion
for rehearing en banc is REJECTED.

O'SCANNLAIN, Circuit Judge, dissenting from the denial of rehearing en banc, joined by KLEINFELD, GOULD, BYBEE, CALLAHAN and BEA, Circuit Judges:

With all due respect to my colleagues, this high-profile case, involving an individual trained in Afghanistan by al-Qaeda and convicted of conspiring to detonate explosives at Los Angeles International Airport as part of a terrorist attack, is an ideal candidate for rehearing en banc. In *United States v. Ressam*, 474 F.3d 597 (9th Cir. 2007), a panel majority concluded that a conviction under 18 U.S.C. § 844(h)(2) requires that explosives be carried not only *during* a felony, as the statute says, but also *in relation to* that felony, which the statute does not say. The panel thus reversed one count of conviction of "Millennium Bomber" Ahmed Ressam. I dissent from the denial of rehearing en banc because *United States v. Stewart*, 779 F.2d 538, 539-40 (9th Cir. 1985), the two-decade old decision of our court upon which the panel relied, does not compel the result reached, and, further, by extending *Stewart* and reading the "in relation to" language into § 844(h)(2), we have not only usurped the congressional function, but have also created a split of authority with every other United States Court of Appeals that has addressed this question. *See* Fed. R. App. P. 35(b)(1)(B).

I

The facts and circumstances surrounding al-Qaeda trainee Ahmed Ressam's plot to detonate explosives at Los Angeles International Airport and his capture as he entered the United States are well-detailed in the panel opinion. *Ressam*, 474 F.3d at 599-601. In brief, Ressam and an associate loaded the trunk of a rental car with explosives, electronic timing devices, detonators, fertilizer, and aluminum sulfate, and drove to a ferry terminal at Twassen, British Columbia. *Id.* at 600. Ressam drove the rental car aboard the ferry, which later that day docked in Port Angeles, Washington. When Ressam attempted to drive his car off, a customs inspector stopped

him for inspection. *Id.* After the customs officer became suspicious and subjected Ressam's vehicle to a more intrusive search, inspectors discovered some of the bomb's component parts. Once the car and all its contents were inventoried and tested, authorities realized that Ressam had all the materials for a full scale terrorist attack. *Id.* Ressam was indicted and convicted on nine counts, including one count of carrying an explosive during the commission of a felony, in violation of 18 U.S.C. § 844(h)(2). *Id.* at 600-01.

## II

The critical legal issue in this appeal is whether Ressam's conviction for carrying an explosive during the commission of a felony must be reversed because the government did not also prove that Ressam was carrying the explosives *in relation to* the underlying felony (the "relational element"), which in this case the government designated as making a false statement in a customs declaration. *See* 18 U.S.C. § 844(h) ("Whoever . . . carries an explosive during the commission of any felony which may be prosecuted in a court of the United States . . . shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years.").

The panel reasoned that our decision in *Stewart*, 779 F.2d at 539-40 compelled it to conclude that 18 U.S.C. § 844(h)(2) contains a relational element. I respectfully disagree. Then-Judge Kennedy's majority opinion in *Stewart* construed 18 U.S.C. § 924(c), which made unlawful the carrying of a firearm during the commission of a felony. At the time of Mr. Stewart's conviction, § 924(c) did not include an explicit relational element. *See Stewart*, 779 F.2d at 539. But by the time his case reached our court on appeal, "Congress [had] revised section 924(c), combining former subsections 924(c)(1) and 924(c)(2). The 1984 amendment substituted for the word 'during' the phrase 'during and in relation to.' " *Id.*

In determining whether the jury was properly instructed at Mr. Stewart's trial, our court focused almost entirely upon the

legislative history of the 1984 amendment. The court's reading of the legislative history "indicate[d] the 'in relation to' language was not intended to create an element of the crime that did not previously exist, but rather was intended to make clear a condition already implicit in the statute." *Id.* Thus, it concluded, because the relational element existed at the time of Stewart's trial, his jury instruction was in error.

But critically, there is no similar legislative history as to § 844(h)(2) because Congress never amended that statute to include the language that it added to § 924(c).[1] As the Third Circuit reasoned in reaching a conflicting conclusion than that of our *Ressam* panel, "even if the *Stewart* court was correct in its analysis of why Congress amended § 924(c), Congress has not seen fit to modify § 844(h) in the same manner." *United States v. Rosenberg*, 806 F.2d 1169, 1178 (3d Cir. 1986).

Indeed, it is telling that when Congress did amend § 844(h)(2) in 1988, it did *not* add the relational language. At that time, Congress had before it our circuit's decision in *Stewart*, 779 F.2d at 539-40, and the Third Circuit's decision in *Rosenberg*, 806 F.2d at 1179. *Rosenberg* had rejected *Stewart*'s general reasoning and its reasoning as specifically applied to § 844(h)(2), instead relying upon the plain, unambiguous language of that section. With these divergent decisions before it, Congress chose in 1988 not to add the "in relation to" language to § 844(h)(2). As the Supreme Court has explained, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts inten-

---

[1]It should go without saying that this may have been a deliberate omission. The carrying of an explosive during the commission of a crime greatly increases the risk of injury or death to others, more so than even a firearm. Plus, it is more likely in the case of explosives than firearms that the "weapon" may go off accidentally. In short, as a policy matter, Congress may have had good reasons for not amending § 844(h)(2) as it amended the firearms statute.

tionally and purposely in the disparate inclusion or exclusion." *United States v. Russello*, 464 U.S. 16, 23 (1983). This presumption of a knowing and intentional Congress in my view compels us to recognize that we are not "constrained" by *Stewart*'s reasoning in deciding the proper interpretation of § 844(h)(2).

### III

But even were the panel constrained by *Stewart*, I think it appropriate to rehear this case en banc because our holding that § 844(h)(2) includes a relational element is in conflict with every other circuit which has had occasion to consider the question. *See Rosenberg*, 806 F.2d at 1178; *United States v. Ivy*, 929 F.2d 147 (5th Cir. 1991); *United States v. Jenkins*, 2005 WL 3440416, ** 3-5 (6th Cir. 2005) (unpublished).[2]

The main thrust of our sister circuits' decisions is that the plain language of § 844(h)(2) says nothing about a relational element, but only requires carrying the explosives *during* the commission of a felony. As *Rosenberg* stated:

> Section 844(h)(2) by its terms only requires that the government show that the defendant unlawfully carried an explosive "during the commission of any felony." The plain everyday meaning of "during" is "at the same time" or "at a point in the course of." *See*, Webster's Third New International Dictionary 703 (1961). It does not normally mean "at the same time and in connection with . . . ." It is not fitting for this court to declare that the crime defined by § 844(h)(2) has more elements than those enumerated on the face of the statute. If Congress sees fit to add a relational

---

[2]The government also contends that the Eighth Circuit's decision in *United States v. King*, 230 F.3d 1364 (8th Cir. 2000) (unpublished), conflicts with *Ressam*, but I think *King*'s reasoning too difficult to follow and too conclusory to give it much weight.

element to § 844(h)(2), it is certainly free to do so, in the same manner that it added a relational element to § 924(c).

806 F.2d at 1178-79.

Further, as the Supreme Court more recently explained, when interpreting a statute "[w]ith a plain, nonabsurd meaning in view," we should not undertake to add missing words or elements, or to soften the impact of Congress' enactments. *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004). According to the Court, "[o]ur unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from 'deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill.' " *Id.* (quoting *United States v. Locke*, 471 U.S. 84, 95 (1985) (internal citations omitted)). As Judge Alarcón stated in his dissent, "Mr. Ressam's proposed instruction would have required the District Court to add an element to § 844(h)(2) that does not appear in the statute enacted by Congress." *Ressam*, 474 F.3d at 606 (Alarcón, J., dissenting in part). It remains to be seen how, in practice, this additional requirement will impact the ability of prosecutors in this circuit to obtain convictions in explosives and terrorism cases. But in my view, *Lamie* confirms that the wisdom of such additions are firmly left to the determination of the legislative branch.

The reasoning and restraint of *Lamie* and of our sister circuits' decisions stand in stark contrast to *Stewart* and the panel decision in *Ressam*.**³** The great advantage of rehearing

───────────

**³**I think it is reasonable to question the validity of *Stewart*'s reasoning even though the statute has been amended to include the relational element. The reliance in that opinion upon the legislative history of an amendment to determine the scope of the pre-amendment statute is questionable. *See United States v. Price*, 361 U.S. 304, 313 (1960) ("[T]he

this appeal before our en banc court is that we could decide the proper interpretation of § 844(h)(2) and overrule *Stewart*, even if it is true that decision has left our circuit with something less than a "clean slate." *Ressam*, 474 F.3d at 602.

## IV

Regardless of whether *Stewart* was correctly decided, I would quite simply not allow that decision to control the outcome of this case without en banc review. Because the panel's decision to vacate "Millennium Bomber" Ahmed Ressam's conviction under 18 U.S.C. § 844(h)(2) is in square conflict with the reasoning of our sister circuits and with the cautionary pronouncements of the Supreme Court, we should have reheard this case en banc. I respectfully dissent from the court's decision otherwise.

---

views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."). And other courts have not read the legislative history relied upon by *Stewart* to be so clear. *See Rosenberg*, 806 F.2d at 1178 ("[W]e do not find that the legislative history to the 1984 amendment 'strongly implied' that the 'in relation to' language did not affect the scope of the statute as originally drafted. At most, we find that the legislative history fails to explain why the 'in relation to' phrase was added to the statute."); *see also Stewart*, 779 F.2d at 540 (noting that the legislative history upon which it relied was "sparse" and "not entirely free of ambiguity").

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.