(Slip Opinion) OCTOBER TERM, 2007 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* RESSAM

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 07–455. Argued March 25, 2008—Decided May 19, 2008

After respondent gave false information on his customs form while attempting to enter the United States, a search of his car revealed explosives that he intended to detonate in this country. He was convicted of, *inter alia,* (1) feloniously making a false statement to a customs official in violation of 18 U. S. C. §1001, and (2) "carr[ying] an explosive during the commission of" that felony in violation of §844(h)(2). The Ninth Circuit set aside the latter conviction because it read "during" in §844(h)(2) to include a requirement that the explosive be carried "in relation to" the underlying felony.

*Held:* Since respondent was carrying explosives when he violated §1001, he was carrying them "during" the commission of that felony. The most natural reading of §844(h)(2) provides a sufficient basis for reversal. It is undisputed that the items in respondent's car were "explosives," and that he was "carr[ying]" those explosives when he knowingly made false statements to a customs official in violation of §1001. Dictionary definitions need not be consulted to arrive at the conclusion that he engaged in §844(h)(2)'s precise conduct. "[D]uring" denotes a temporal link. Because his carrying of explosives was contemporaneous with his §1001 violation, he carried them "during" that violation. The statute's history further supports the conclusion that Congress did not intend a relational requirement in §844(h) as presently written. Pp. 2–6

474 F. 3d 597, reversed.

STEVENS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, SOUTER, GINSBURG, and ALITO, JJ., joined, and in which SCALIA and THOMAS, JJ., joined as to Part I. THOMAS, J., filed an opinion concurring in part and concurring in the judgment, in which SCALIA, J., joined. BREYER, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–455

UNITED STATES, PETITIONER *v.* AHMED RESSAM

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[May 19, 2008]

JUSTICE STEVENS delivered the opinion of the Court.

Respondent attempted to enter the United States by car
ferry at Port Angeles, Washington. Hidden in the trunk of
his rental car were explosives that he intended to detonate
at the Los Angeles International Airport. After the ferry
docked, respondent was questioned by a customs official,
who instructed him to complete a customs declaration
form; respondent did so, identifying himself on the form as
a Canadian citizen (he is Algerian) named Benni Noris
(his name is Ahmed Ressam). Respondent was then di-
rected to a secondary inspection station, where another
official performed a search of his car. The official discov-
ered explosives and related items in the car's spare tire
well.

Respondent was subsequently convicted of a number of
crimes, including the felony of making a false statement to
a United States customs official in violation of 18 U. S. C.
§1001 (1994 ed., Supp. V) (Count 5) and carrying an explo-
sive "during the commission of" that felony in violation of
§844(h)(2) (1994 ed.) (Count 9). The Court of Appeals for
the Ninth Circuit set aside his conviction on Count 9
because it read the word "during," as used in §844(h)(2), to

include a requirement that the explosive be carried "in relation to" the underlying felony. 474 F. 3d 597 (2007). Because that construction of the statute conflicted with decisions of other Courts of Appeals, we granted certiorari.[1]  552 U. S. ___ (2007).

I

The most natural reading of the relevant statutory text provides a sufficient basis for reversal. That text reads:

"Whoever—
"(1) uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States, or
"(2) carries an explosive during the commission of any felony which may be prosecuted in a court of the United States,

"including a felony which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years." 18 U. S. C. §844(h).

It is undisputed that the items hidden in respondent's car were "explosives."[2]  It is also undisputed that respon-

––––––––––

[1] Both the Third and Fifth Circuits have declined to interpret §844(h)(2) as requiring that the explosive be carried in relation to the underlying felony. See *United States* v. *Rosenberg,* 806 F. 2d 1169, 1178–1179 (CA3 1986) ("The plain everyday meaning of 'during' is 'at the same time' or 'at a point in the course of. . . . It does not normally mean 'at the same time and in connection with. . . .' It is not fitting for this court to declare that the crime defined by §844(h)(2) has more elements than those enumerated on the face of the statute"); *United States* v. *Ivy,* 929 F. 2d 147, 151 (CA5 1991) ("Section 844(h)(2) . . . does not include the relation element Ivy urges. . . . We . . . refuse to judicially append the relation element to §844(h)(2)").

[2] Because respondent concedes that the items in his car were "explosives," we have no occasion to determine the boundaries of that term as used in the statute. Specifically, we do not comment on when, if ever,

dent was "carr[ying]" those explosives when he knowingly made false statements to a customs official, and that those statements violated §1001 (1994 ed., Supp. V).

There is no need to consult dictionary definitions of the word "during" in order to arrive at the conclusion that respondent engaged in the precise conduct described in §844(h)(2) (1994 ed.). The term "during" denotes a temporal link; that is surely the most natural reading of the word as used in the statute. Because respondent's carrying of the explosives was contemporaneous with his violation of §1001, he carried them "during" that violation.

## II

The history of the statute we construe today further supports our conclusion that Congress did not intend to require the Government to establish a relationship between the explosive carried and the underlying felony. Congress originally enacted §844(h)(2) as part of its "Regulation of Explosives" in Title XI of the Organized Crime Control Act of 1970, 84 Stat. 957. The provision was modeled after a portion of the Gun Control Act of 1968, §102, 82 Stat. 1224, codified, as amended, at 18 U. S. C. §924(c) (2000 ed. and Supp. V). The earlier statute mandated at least 1 and no more than 10 years' imprisonment for any person who "carries a firearm unlawfully during the commission of any felony which may be prosecuted in a court of the United States." 18 U. S. C. §924(c)(2) (1964 ed., Supp. IV). Except for the word "explosive" in §844(h)(2), instead of the word "firearm" in §924(c)(2), the two provisions as originally enacted were identical.

In 1984, Congress redrafted the firearm statute; it increased the penalties attached to the provision and, most significantly for our purposes, deleted the word

---

"such commonplace materials as kerosene, gasoline, or certain fertilizers," *post*, at 2 (BREYER, J., dissenting), might fall within the definition of "explosive."

"unlawfully" and inserted the words "and in relation to" immediately after the word "during." §1005(a), 98 Stat. 2138. Reviewing a conviction for an offense that was committed before the amendment but not decided on appeal until after its enactment, the Ninth Circuit held that the original version of the firearm statute had implicitly included the "in relation to" requirement that was expressly added while the case was pending on appeal. As then-Judge Kennedy explained:

> "The statute as written when Stewart committed the offense provided in pertinent part that it was a crime to 'carr[y] a firearm unlawfully during the commission of any felony. . . .' 18 U. S. C. §924(c)(2) (1982). In 1984, Congress revised section 924(c) . . . . The 1984 amendment substituted for the word 'during' the phrase 'during *and in relation to.*' 18 U. S. C. A. §924(c) (West Supp. 1985) (emphasis added). Our study of the legislative history of the amendment . . . indicates the 'in relation to' language was not intended to create an element of the crime that did not previously exist, but rather was intended to make clear a condition already implicit in the statute. The legislative history reveals that because the amendment eliminated the requirement that the firearm be carried unlawfully, 18 U. S. C. A. §924(c) (West Supp. 1985), the 'in relation to' language was added to allay explicitly the concern that a person could be prosecuted under section 924(c) for committing an entirely unrelated crime while in possession of a firearm. Though the legislative history does not say so expressly, it strongly implies that the 'in relation to' language did not alter the scope of the statute . . . ." *United States* v. *Stewart*, 779 F. 2d 538, 539–540 (1985) (citations omitted).

Relying on that Circuit precedent, the Court of Appeals

in this case concluded that the explosives statute, like the firearm statute, implicitly included a requirement of a relationship between possession of the item in question and the underlying felony. Whatever the merits of the argument that §924(c) as originally enacted contained a relational requirement, the subsequent changes to both statutes convince us that the Government's reading of §844(h) as presently written is correct.

## III

In 1988, Congress enacted the "Explosives Offenses Amendments," §6474(b), 102 Stat. 4379, which modified the text of §844(h). Those amendments increased the penalties for violating the provision, §6474(b)(2), *id.,* at 4380; they also deleted the word "unlawfully," §6474(b)(1), *ibid.* Unlike its earlier amendment to the firearm statute, however, Congress did not also insert the words "and in relation to" after the word "during." While it is possible that this omission was inadvertent, that possibility seems remote given the stark difference that was thereby introduced into the otherwise similar texts of 18 U. S. C. §§844(h) and 924(c).

Even if the similarity of the original texts of the two statutes might have supported an inference that both included an implicit relationship requirement, their current difference virtually commands the opposite inference. While the two provisions were initially identical, Congress' replacement of the word "unlawfully" in the firearm statute with the phrase "and in relation to," coupled with the deletion of the word "unlawfully" without any similar replacement in the explosives statute, convinces us that Congress did not intend to introduce a relational requirement into the explosives provision, but rather intended us to accept the more straightforward reading of §844(h). Since respondent was carrying explosives when he violated §1001, he was carrying them "during" the commis-

sion of that felony.  The statute as presently written re-
quires nothing further.

Accordingly, the judgment of the Court of Appeals is
reversed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 07–455

———————

## UNITED STATES, PETITIONER *v.* AHMED RESSAM

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[May 19, 2008]

JUSTICE THOMAS, with whom JUSTICE SCALIA joins,
concurring in part and concurring in the judgment.

Because the plain language of the statute squarely
answers the question presented in this case, I join only
Part I of the Court's opinion.

# SUPREME COURT OF THE UNITED STATES

No. 07–455

## UNITED STATES, PETITIONER *v.* AHMED RESSAM

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[May 19, 2008]

JUSTICE BREYER, dissenting.

The statute before us imposes a mandatory 10-year sentence on any person who "carries an explosive during the commission of any [federal] felony." 18 U. S. C. §844(h)(2). The Ninth Circuit interpreted the statute as requiring a "relation" between the explosives-carrying and the felony (here, making a false statement to a customs officer), such that the explosives-carrying "'facilitated'" or "aided" the commission of the felony. 474 F. 3d 597, 604 (2007). The Court interprets the statute to the contrary. It holds that the statute requires no more than a "temporal link" between the explosives-carrying and the felony, that is to say, the two need only have occurred at the same time. See *ante*, at 3. I cannot agree with either interpretation.

I

My problem with the Court's interpretation is that it would permit conviction of any individual who legally carries explosives at the time that he engages in a totally unrelated felony. "Explosives," the statute tells us, includes not only obviously explosive material such as "gunpowders" and "dynamite" but also any "chemical compounds" or "mixture[s]" or "device[s]" whose "ignition by fire, by friction, by concussion" or other means "may cause an explosion." 18 U. S. C. §844(j). And that definition

encompasses such commonplace materials as kerosene, gasoline, or certain fertilizers. Moreover, the "carr[ying]" to which the statute refers includes carrying that is otherwise legal. Further, the statute applies to the carrying of explosives during "any" federal felony, a category that ranges from murder to mail fraud. See §1111 (2000 ed. and Supp. V); §1341 (2000 ed., Supp. V).

Consequently the Court's opinion brings within the statute's scope (and would impose an additional mandatory 10-year prison term upon), for example, a farmer lawfully transporting a load of fertilizer who intentionally mails an unauthorized lottery ticket to a friend, a hunter lawfully carrying gunpowder for shotgun shells who buys snacks with a counterfeit $20 bill, a truckdriver lawfully transporting diesel fuel who lies to a customs official about the value of presents he bought in Canada for his family, or an accountant who engaged in a 6-year-long conspiracy to commit tax evasion and who, one day during that conspiracy, bought gas for his lawnmower. In such instances the lawful carrying of an "explosive" has *nothing whatsoever* to do with the unlawful felonies. I cannot imagine why Congress would have wanted the presence of totally irrelevant, lawful behavior to trigger an additional 10-year mandatory prison term.

The statute's language does not demand such an interpretation. I agree with the majority that the word "during" requires a "temporal link." See *ante*, at 3. But a statement that uses the word "during" may or may not imply *other* limitations as well, depending upon the context in which the statement is made. Thus, when I tell a friend from Puerto Rico, "I wear gloves during Washington's winter," he does not think I mean baseball mitts. Rather, I imply (and he understands) a relation or link between the gloves and the winter. When I say to a group of lawyers, "I take notes during oral argument," I imply (and they understand) that the notes bear a relation to the

law being argued. But when I say, "I called my brother during the day," I do not imply any particular relation (other than a temporal relation) between the day and the phone call. Context makes the difference.

Here, the statute's context makes clear that the statutory statement does not cover a "carr[ying]" of explosives that is totally unrelated to the "felony." The lengthy mandatory minimum sentence is evidence of what the statute's legislative history separately indicates, namely that Congress sought to criminalize and impose harsh penalties in respect to the "intentional *misuse* of explosives," see H. R. Rep. No. 91–1549, p. 38 (1970) (emphasis added) (hereinafter H. R. Rep.). A person who *lawfully* carries explosives while committing some other felony does not even arguably "misuse" those explosives unless the carrying has something to do with the other felony. Nor in the absence of some such relationship is there any obvious reason to impose an additional mandatory 10-year sentence on a person who *unlawfully* carries explosives while committing some other felony.

Similar reasoning led the Ninth Circuit in 1985 to interpret a related statute, which punished the carrying of a *firearm* "during" the commission of a federal felony, as requiring a significant relationship between the firearms-carrying and the other felony. See *United States* v. *Stewart*, 779 F. 2d 538. JUSTICE (then-Judge) KENNEDY recognized that "'Congress did not intend to penalize one who happens to have a gun in his possession when he commits an entirely unrelated offense.'" *Id.,* at 540 (quoting *United States* v. *Moore*, 580 F. 2d 360, 362 (CA9 1978)). In my view, that same reasoning should apply when we interpret the explosives statute, which was originally modeled on the firearms statute. See H. R. Rep., at 69 (the explosives statute "carries over to the explosives area the stringent provisions of the Gun Control Act of 1968 relating to the use of firearms and the unlawful carrying of firearms to

commit, or during the commission of a Federal felony").

I recognize that the language of the firearms statute now differs from the language of the explosives statute in an important way. The firearms statute originally punished (with a 1-to-10-year sentence) a person who "carries a firearm unlawfully during the commission of any [federal] felony." 18 U. S. C. §924(c)(2) (1964 ed., Supp. IV). In 1984, Congress amended the firearms statute by providing a mandatory minimum punishment of five years and by striking the word "unlawfully." §1005(a), 98 Stat. 2138. When it did so, Congress also added to the statute specific words of limitation, namely the words "and in relation to" (so that the statute covered any person who carried a firearm "during and in relation to" the commission of a "felony"). *Ibid.*

The words "in relation to" do not appear in the explosives statute. But neither did those words appear in the pre-1984 version of the firearms statute that was the subject of the Ninth Circuit opinion in *Stewart* (yet the Ninth Circuit nonetheless found an implicit relational requirement). And the fact that these words now appear in the firearms statute but not the explosives statute cannot make the determinative difference.

The history of the firearms statute makes clear that the reason Congress added to that statute the words "in relation to" has to do with Congress' decision to remove from the firearms statute the word "unlawfully". By removing that word, Congress indicated that the firearms statute should apply to "persons who are licensed to carry firearms" but who "abuse that privilege by committing a crime with the weapon." S. Rep. No. 98–225, p. 314, n. 10 (1983). At the same time, however, Congress believed that the statute should not apply where the firearm's presence "played no part in the crime, such as a gun carried in a pocket and never displayed or referred to in the course of a pugilistic barroom fight." *Ibid.* The addition of the words

"in relation to" made this dual objective textually clear.

The absence of the words "in relation to" here must lead us to ask (but it does not answer) the question: Did Congress intend something different in respect to the explosives statute? There are strong reasons for thinking it did not. Congress, after all, amended the explosives statute in response to the Department of Justice's express request to "bring" the explosives statute "in line with" the firearms statute. See 131 Cong. Rec. 14166 (1985); see also 134 Cong. Rec. 32700 (1988) (statement of Sen. Biden) (noting that the purpose of amending the explosives statute was to "bring it in line with similar amendments [previously] adopted . . . with respect to the parallel offense of using or carrying a firearm during the commission of federal offenses"). Congress accordingly increased the mandatory minimum punishment to five years and struck the word "unlawfully." See §6474(b), 102 Stat. 4379–4380. If Congress, in neglecting to add the words "in relation to," sought to create a meaningful distinction between the explosives and firearms statutes, one would think that someone somewhere would have mentioned this objective.

Further, to read the two statutes differently would break the very parallel treatment of firearms and explosives that led Congress, at the Department of Justice's urging, to amend the explosives statute in the first place. It would produce the peculiar and unfair results I previously mentioned. See *supra*, at 2. It would conflict with Congress' original rationale for enacting the explosives statute (to punish the *misuse* of explosives). And it would risk incoherent results: Why would Congress wish not to punish a policeman for carrying an unrelated revolver during the commission of a felony, but then wish to punish that same policeman for carrying unrelated gunpowder for unrelated bullets?

At the same time one can explain the absence of the words "in relation to" in less damaging ways. The legisla-

tive drafters of the explosives amendment may have as-
sumed that prior judicial interpretation, (namely, *United
States* v. *Stewart,* 779 F. 2d 538) made the words "in rela-
tion to" unnecessary. See *Lorillard* v. *Pons*, 434 U. S. 575,
580 (1978) ("Congress is presumed to be aware of an ad-
ministrative or judicial interpretation of a statute and to
adopt that interpretation when it re-enacts a statute
without change"). Or, as the majority recognizes, the
omission of the language may reflect simple drafting
inadvertence. See *ante*, at 5.

I concede that the presence of a phrase in one statute
and the absence of the same phrase in another related
statute can signal an intended difference in relative statu-
tory scope. But that is not inevitably so. Cf. *Russello* v.
*United States*, 464 U. S. 16, 23 (1983) (noting only a *pre-
sumption* that Congress has acted intentionally and pur-
posely if it "includes particular language in one section of
a statute but omits it in another section of the same Act"
(internal quotation marks omitted)). And here the cir-
cumstances that I have mentioned make this a case in
which that linguistic fact is not determinative.

No more here than elsewhere in life can words alone
explain every nuance of their intended application. Con-
text matters. And if judges are to give meaningful effect
to the intent of the enacting legislature, they must inter-
pret statutory text with reference to the statute's purpose
and its history.

The Court, with its decision today, makes possible the
strange results I describe above precisely because it re-
solves the statutory interpretation question by examining
the meaning of just one word in isolation. In context,
however, the language excludes from the statute's scope
instances in which there is no significant relation between
the explosives-carrying and the felony. A contextual
interpretation furthers Congress' original purpose, is less
likely to encourage random punishment, and is consistent

with the statute's overall history. As a result, like the Ninth Circuit, I would read the statute as insisting upon some (other than merely temporal) relationship between explosives carrying and "felony."

## II

At the same time, I cannot agree with the Ninth Circuit that the statute restricts the requisite relationship to one in which the carrying of the explosives "'facilitated'" (or "aided") the *felony*. 474 F. 3d, at 604. In my view, the statute must also cover a felony committed to facilitate the *carrying of explosives*. Why should it matter in which direction the facilitating flows? Either way, there is a relation between the carrying of explosives and the other felony. Either way, one might reasonably conclude that the presence of the explosives will elevate the risks of harm that otherwise would ordinarily arise out of the felony's commission. Either way, one might consider the explosives "misused." Thus, I believe the statute applies if the felony, here, the making of a false statement to a customs officer, facilitated or aided the carrying of explosives. And I would remand the case for the Circuit to determine the presence or absence of that relevant relation.

For these reasons, I respectfully dissent.